By the Court.
Oakley, Ch. J.
It is not to be denied that there is much force in the arguments that have been addressed to us by the learned counsel for the appellants, upon the principal question in the cause, viz. the liability of the Company to be taxed, under the Revised Statutes, as a monied corporation, deriving an income or profit from its capital (1 R. S. Part 1, Chap. 13, Tit. iv.); and were we at liberty to consider that question as still open, we should, perhaps, find it difficult to escape from the conclusion that was pressed upon our adop *14 tion ; but we cannot regard the question as now open. We are unable to distinguish this case from that which the Court of Appeals has recently decided. The difference between them is merely circumstantial; in principle, there is none whatever ; and the judgment of the court of ultimate jurisdiction must therefore control our own. We are thus constrained to say that the annual profits of the Company, which are retained and invested as a fund for the payment of its debts, and yielding an income to its members, are a capital, within the meaning of the Revised Statutes, and upon which, as such, the disputed tax has been legally assessed.
Nor can wo exempt the appellants from the payment of this tax, upon the ground that the Act of the Legislature under the authority of whicn. it was imposed, is unconstitutional and void. The power of courts of justice to declare the nullity of Legislative Acts, which violate the provisions either of the Constitution of tlie United States or of the State, is undoubted ; but the power, for manifest reasons, is to be exercised in all cases, with extreme caution, and never, where a serious doubt exists as to the true interpretation of the provisions that are alleged to be repugnant. In the present case, we think, it may be seriously doubted, whether the clause in the Constitution upon which the appellants’ counsel mainly relied (Cons. § 13, Art. 7), ought not to be construed as relating, exclusively, to the imposition of a general tax for State purposes, and not, at all, to the imposition of a local tax for local objects, and the doubts we feel would alone preclude our positive adoption of a different construction.
Were we satisfied, however, that tlie clause in question must necessarily be construed as embracing every law by which a tax, local or general, is imposed, or an authority to impose such a tax, is given, we should still be unable to say that the intent of the provision is violated by the act of 1850, under which our Board of Supervisors has acted. Had the act failed to state the amount of the tax that the Supervisors are empowered to raise, or to direct the application of the money when raised, it would have been liable to the objections that have been urged ; but it is not thus defective, and neither of these sins of omission can be justly imputed. That the tax itself (that is, the amount to be raised, and the *15 property upon which it is to be levied) is distinctly stated, is not denied, and we think that the object to which it is to be applied, is stated as distinctly as, from, the nature of the object, could be justly required, or, perhaps, was practicable. It is true, that a very large proportion of the whole amount of the tax is directed to be applied towards defraying the contingent expenses of the city, without any distribution ot those expenses, under different heads or branches of expenditure, and the appropriation to each of a definite sum. But if the expenses thus provided for were, as we are bound to "suppose, in reality contingent, that is casual, uncertain, and fluctuating, such a division and special appropriation were impracticable. Expenses are contingent, because it is not and cannot be known, under what head of expenditure they will fall, nor consequently what sum must be appropriated, under each head, in order to meet them. It is only their total amount that can be anticipated by an estimate approaching to certainty, and hence it is only by the appropriation of a sum, in gross, that the requisite provision for their payment can be made.
The Constitution of the United States contains a clause which bears a very exact analogy to that we are considering. It is that which declares that “ no money shall be' drawn from the treasury but in consequence of appropriations made by law ” (Const. U. S., Art. 1, Sec. 9, No. 6). The appropriation of money to a particular purpose means exactly the same, as the designation of the object to which the money is to be applied. The difference is only in the form of expression. We believe that every Act of Congress, providing for the annual expenses of an executive department of the government, appropriates a sum, in gross, as a provision for miscellaneous or contingent expenses, but, we apprehend, it has never been thought that upon this ground the validity of such a law, or appropriation, was liable to be questioned.
The objection to the validity of the Act of 1850, founded upon § 16 in Art. 3 of the Constitution, is still more untenable than that we have considered. The raising of a tax, and its collection and application, may, most reasonably, be considered as one subject, and this subject is therefore sufficiently expressed in the title of the act. This is emphatically true, if the clause in the *16 Constitution which relates to the imposition of a tax, is applicable to a local act, since upon this supposition the law, which imposes the tax, must embrace its application.
It is not a light thing to set aside an Act of the Legislature, even when the objections to its validity are grave and weighty, but when they touch not the substance of the law, or of the authority of the Legislature to pass it, but are merely criticisms upon its form or phraseology, the exercise of such a power by the judiciary of the state would be prolific of evil, and would soon be universally condemned. We think the condemnation would be just, and are not at all disposed to incur it.
The judgment at special term is affirmed with costs.