THE PEOPLE on the relation of JOHN L. PEAKE, Respondent, *v.* THE BOARD OF SUPERVISORS OF COLUMBIA COUNTY, Appellants.

The act of 1864 (chap. 8, § 22), giving the boards of supervisors of counties power to raise money for the payment of bounties to volunteers into the military and naval service of the United States, is not to be construed as retroactive; and such boards, therefore, have no authority to raise money for the payment of any sum by way of bounty, to persons who, previously to the passage of that act, had volunteered into the United States military or naval service.

(Argued November 22d, and decided November 29th, 1870.)

APPEAL from the order of the late General Term in the third district, ordering a peremptory mandamus to issue, requiring the board of supervisors of Columbia county to take measures to raise $500 to pay a bounty to the relator.

The Special Term, upon the facts set forth in the moving papers, had denied the motion for a mandamus, which order the General Term reversed.

By a resolution of the board of supervisors of that county, dated July 26, 1864, they resolved that a bounty of $500 be paid for each person who has already or may hereafter enlist as a volunteer, who has or may hereafter be credited to that county on the call (referring to the call of the President of July 18th, 1864, for 500,000 volunteers), in the naval or military service for three years, on the certificate of the provost marshal that such volunteer has been duly mustered into the service to the proper credit.

By a resolution adopted at the same time, it was:

"*Resolved*, That the county treasurer be, and hereby is authorized to borrow upon the credit of the county, and is hereby authorized to issue obligations therefor on behalf of said county to the amount, in the manner and payable as directed by the committee hereafter appointed for the purpose of carrying out the above resolutions, and if necessary, with the chairman, to issue bonds for the procuring of the requisite funds."

By a law of the United States, passed July 4th, 1864, it was enacted: "That all persons in the naval service of the United States, who have entered said service during the present rebellion, who have not been credited to the quota of any town, district, ward or State, by reason of their being in said service, and not enrolled prior to February 24th, 1864, shall be enrolled and credited to the quotas of the town, ward, district or State in which they respectively reside, upon satisfactory proof of their residence made to the secretary of war."

It appeared from the petition of the relator, that he entered and enlisted as a volunteer into the naval service of the United States in 1861; that he had not, at the passage of the act of congress, July 4th, 1864, been credited to any quota; that he had not been enrolled prior to February 24th, 1864; that his residence was the city of Hudson; that after the passage of the act of congress, and after the call and the resolution of the board of supervisors on September 26th, 1864, he was enrolled and credited to the city of Hudson on the call, in pursuance of section eight of that act, "upon satisfactory proof of his residence to the Secretary of war.

*J. C. Newkirk and C. P. Collier,* for the appellants.

*Horace R. Peck and R. E. Andrews,* for the respondent.

ALLEN, J.   The claim of the relator rests primarily upon the authority conferred by act of the legislature in 1864, upon the board of supervisors of the several counties, to raise money by tax for the purpose of paying bounties to volunteers into the military and naval service of the United States (Laws of 1864, chap. 8, § 22), and in great measure depends upon the true construction of that act. For, if the action of the board of supervisors, which is essential to the relator's case, and necessary to sustain his claim, was in excess of the powers conferred, *quoad* such excess, the action was void as *ultra vires.* The relator must, therefore, bring his claim

within the statute, as well as within the terms of the resolutions and action of the board of supervisors. The act had two objects; one to legalize irregular and unauthorized proceedings of citizens, public bodies, and municipal authorities, theretofore taken for the purpose of procuring recruits to the army and navy of the United States, in response to the calls of the federal government, and to fill the quotas which had been assigned to the different sections of the State, and to give validity to, and to provide for, the payment of obligations which had been incurred in various forms by different localities and municipal bodies for that purpose. To this extent the act was retrospective. It had respect to, and operated upon, past transactions. Provision was made for this object in the sections of the act preceding the twenty-second.

Another object was to provide for the future, and to make such provision that there would be no occasion to resort to any unauthorized assumption of power by public officers or unauthorized proceedings of any kind, to meet exigencies that might arise.

The occasion of the enactment of a law may always be referred to in interpreting and giving effect to it. The court should place itself in the situation of the legislature and ascertain the necessity and probable object of the statute, and then give such construction to the language used as to carry the intention of the legislature into effect, so far as it can be ascertained from the terms of the statute itself. (*Donaldson* v. *Wood*, 22. W. R., 395; 1 Bacon's Ab. Statutes, 5.)

It needs no particular reference to the history of the country contemporaneous with and preceding the passage of the act to show the necessity, the occasion and probable purpose of the law. It is fresh in the recollection of all, that repeated calls had been made upon this and other States for men to serve in the army and navy of the United States for the suppression of the rebellion; that recruits could not be enlisted except under the inducements of large pecuniary rewards; that compulsory enlistments and drafts had been resorted to, to fill the ranks of the federal army, and that as serious diffi-

culties and disturbances had already occurred in filling quotas theretofore assigned to different districts and localities, still greater difficulties might be apprehended in responding to any future call that might be made. The first twenty sections of the act attest the necessity of provisions for the future by disclosing the lengths to which the people had been compelled to depart from all precedent and from all authority of law in making provision for the extraordinary emergencies which had arisen, and which in all probability would be repeated. Hence the twenty-second section was enacted, and very liberal powers conferred by it upon boards of supervisors, which were only necessary for the future, and the language employed is that which would be employed to establish a rule for future cases. By it, the board of supervisors of the several counties were authorized and empowered to raise money upon the credit of the county or by tax "for the purpose of paying bounties to volunteers into the military or naval service of the United States during the existence of the war now carried on."

The power might be exercised so long as the war should last, and from time to time as occasion should require. "During the war" had respect to its continuance in the future, and while the language of the statute might be considered broad enough, if there was a necessity for an enlarged construction to include bounties before then promised to recruits acting upon the offer, all such cases were provided for in other parts of the act. The language is not sufficiently comprehensive to authorize the levy of a tax, or the borrowing of money to give as a gratuity or as a pension.

The legislature had not in their minds any act of generosity or gratitude to those who had served or were then serving in the army and navy of the United States, and the word "bounty" which they used was the very word to express their intent to authorize the raising of money to be paid or given as "a premium to induce men to enlist in the public service" thereafter. The payment of money to one who had voluntarily and without the inducement of a premium or reward offered or promised, enlisted into the public

service would be a gift, a gratuity and not a bounty, in the ordinary sense of the word, and the act cannot, without doing violence to language as well as the intent of the legislature, be so construed as to include gratuities of that character.

The rules for the construction of statutes confined their operation and effect to the future, and excluded the past and all past transactions, unless the intention of the legislature to make them retrospective in their operation is very clearly and unequivocally expressed. It is not allowed by an interpretation of doubtful language, or by spelling out an intent not apparent and palpable, to give them a retroactive effect. The general rule governing the construction of statutes in this respect, as stated in *Bacon's Abr.* Statute C., is "that no statute is to have a retrospect beyond the time of its commencement; for the rule and law of parliament is, that *nova constitutio futuris formam debit imponere, non praeteritis*," and this has been adopted by elementary writers and uniformly followed in principle by the courts. (Dwarris on Stat., 680; 1 Bl. Com., 46; Sedgwick on Statutory Law, 189; Smith's Com., 291.) The rule has been expressed in different terms by different judges and authors, but it has lost none of its force since it was first enunciated. Mr. Broom, in his "Legal Maxims," after quoting the maxim from 2 Inst., 292, says: "It is in general true, that no statute shall be construed to have a retrospective operation without express words to that effect, either by an enumeration of the cases in which the act is to have such retrospective operation, or by words which can have no meaning unless such a construction is adopted." (Broom's Leg. Max., 14.)

This is the language of the court substantially in *Moore* v. *Durden* (2 Exch. R., 21), and it was applied in the construction of a statute, declaring that no suit should be brought or *maintained* upon a wager.

In *Murray* v. *Gibson* (15 Howard U. S. R., 421), a statute of Mississippi, declaring that no record of any judgment recovered in a foreign State against a citizen of that State, should be received as evidence after the expiration of three

years from the time of the rendition of such judgment, was held not to apply to a judgment rendered before its passage. Judge DANIELS says: " As a general rule for the interpretation of statutes, it may be laid down that they never should be allowed a retrospective operation, when this is not required by express command, or by necessary and unavoidable implication. Without such command or implication, they speak and operate upon the future only."

To give the act, upon which the relator predicates his claim, a retroactive effect, would authorize the creation of a debt, or obligation, on a consideration which had passed, instead of providing a remedy for an existing contract, or authorizing a contract to be made, for future survices, which is not allowable. (*Inhabitants of Medford* v. *Learned*, 16 Mass., 215.)

The subject was elaborately discussed in *Dash* v. *Van Kleeck* (7 J. R., 477), and the maxim before quoted from 2 Inst., was adopted and applied. It was held that it was a principle of universal jurisprudence, that laws civil and criminal, must be prospective, and should not operate retrospectively, except upon the clearest expression, of the legislative intention to that effect. A statute general in its terms, exempting from prosecution for libel, the publishing of legislative debates, etc., was declared to be prospective, and no defence to an action for a publication before its enactment. (*Sanford* v. *Bennett*, 24 N. Y., 20.) The court followed the cases of *Dash* v. *Van Kleeck* (*supra*), in *Butler* v. *Palmer* (1 Hill, 324); *People* v. *Carnal* (2 Seld., 463); *Wood* v. *Oakley* (11 Paige, 400), and *Ely* v. *Holton* (15 N. Y., 595), and adopted the general rule of construction as stated.

By chapter 324 of the Laws of 1844, section three, it was enacted, that it should be lawful for any party to a suit " who shall have obtained a verdict, or a report of referees, in his favor, to tax interest upon the amount of such verdict, or report, as costs, from the time of obtaining the same," etc. ; and the court held that " notwithstanding the peculiar phraseology of the section, it ought not to be so construed as to

give it a retroactive effect " and interest was not allowed upon a verdict rendered before its passage. (*Bailey* v. *Mayor of N. York,* 7 Hill, 146 ; *Bull* v. *Ketcham,* 2 Denio, 288 ; and see *Palmer* v. *Conley,* 4 Denio, 374, affirmed, 2 Comst., 182 ; *Van Rensselaer* v. *Livingston,* 12 W. R., 490; *People* v. *Supervisors of Columbia,* 10 W. R., 363.) Whether a statute should have a retroactive effect, is, ordinarily, a question of construction, and not of legislative power; and, therefore, the general rule must yield to the intention of the legislature ; and the inquiry is, whether the retroactive intention is sufficiently expressed." The legislature is competent to give a *statute a retrospective effect,* except as prohibited by the Constitution from passing *ex-post facto* laws, or laws impairing the obligation of contracts; or unless vested rights of property would be affected. There is no restriction in this respect upon the powers of the legislature by the State Constitution. Some laws are necessarily retrospective, such as laws for confirming official acts, amending charters, correcting assessment rolls, changing the tenures of lands, relating to remedies, etc. The interests of the community require that acts like those named should operate retrospectively.

But there is nothing in the terms of the statute under consideration, the occasion or purpose of its enactment, or in the public interests, calling for or permitting it to have any effect other than prospective. It follows, that whatever may be the construction of the resolutions, and acts of the board of supervisors, they cannot be operative, or effectual, to impose an obligation upon the county, or confer rights upon individuals, other than such as are authorized by the statute ; and as that part of the act relied upon did not contemplate, or authorize the payment of money, except as a bounty, thereafter to be earned, the relators' claim must fail.

The order of the Supreme Court at General Term should be reversed ; and that at Special Term be affirmed with costs.

All the judges concurring except PECKHAM, J., who having been a member of the General Term below, did not sit.

Order reversed, and that of Special Term affirmed.