THE PEOPLE ex rel. SILAS H. WITHERBEE, et al. Appellants, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF ESSEX, Respondent.

Upon appeal to this court from an order of General Term granting a new trial, the court is not confined to the grounds upon which the decision below was based; but if any other ground appears sufficient to sustain the order, it will be upheld.

Statement of case.

Where, owing to a dispute as to the boundary line, the real estate of a person is assessed in two towns, proceedings by mandamus may be maintained against the board of supervisors of the county, in case of its refusal to act, to compel such board to ascertain and determine the amount which the person is equitably entitled to receive back, and from which of the towns, as authorized by the act of 1873 (chap. 119, Laws of 1873.)

The fact that the assessors of one of the towns had no jurisdiction to make the assessment, and that the relator has a cause of action against them, does not deprive him of the right to proceed by mandamus; the statute was intended to provide a cumulative, less expensive and more speedy, remedy, and is mandatory.

Said act is not violative of any provision of the Federal or State Constitutions.

Due process of law simply requires that a party shall be properly brought into court and shall there have an opportunity to prove any fact which, according to the constitution and the usages of the common law, would be a protection to him or his property. The Legislature has the right to take away a particular form of remedy, and to give a new one.

An alternative writ of mandamus was issued in proceedings against a board of supervisors for refusal to act under said statute; the petition presented by the petitioners to the board, was incorporated in and made part of the writ, the defendants took issue upon the allegations of fact in the petition, and a trial was had thereon. *Held*, that upon appeal, the allegations of the petition were to be considered as averments of the writ, and if, with the other averments, they were sufficient to make out a case, the writ would be sustained.

The occasion of the enacting of a law may be looked to, to assist in determining its character as retroactive or prospective.

The statute above mentioned was intended for cases existing at the time of its passage as well as for those occurring thereafter.

The death of one of several co-partners, who are the petitioners in proceedings by mandamus, after return to an alternative writ, does not abate the writ.

(Argued June 10, 1877 ; decided June 22, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order reversing a judgment entered upon the report of a referee which awarded a peremptory mandamus and directing final judgment against the surviving relator.

The proceedings were originally instituted by Silas H. Witherbee, Jonathan G. Witherbee and Friend P. Fletcher, composing the firm of Witherbee & Fletcher as relators.

After the return to the alternative writ, Jonathan G. Wither-. bee and Fletcher died.

The alternative writ set forth that the petitioners presented to the board of supervisors of Essex county a petition which was set forth and incorporated in the writ. The petition alleged in substance that the petitioners erected a blast furnace upon a lot of the " iron ore tract," so called, in the county of Essex, which furnace was located near the division line between the towns of Westport and Elizabethtown, in said county; that a dispute arose between said towns, each claiming that the furnace was located within its limits. That during the years from 1865 to 1870 inclusive, said blast furnace was assessed in both towns, and the petitioners paid under protest the taxes thereon in both towns. That in 1872 the line was established by the board of supervisors, by which it was determined that the furnace was in the town of Westport. The petition prayed that said board should ascertain, fix and determine the amount the petitioners were equitably entitled to recover back from said towns, or either of them, for taxes paid while the line was in dispute, and to levy, collect and pay over to petitioners the amount so ascertained. The writ further alleged that said board, by resolution, laid the petition and application upon the table and refused to take action thereon. The return to the writ denied. that the furnace was assessed in both towns, or that the relators paid any taxes upon the same property in both towns, and raised various questions as to the regularity of the proceedings.

The facts, as far as material, appear in the opinion.

*Samuel Hand,* for the appellant. The judgment of the General Term was erroneous in not granting a new trial. (*Foote* v. *Etna Ins. Co.,* 61 N. Y., 571, 578.) Chapter 119, Laws of 1873, is not unconstitutional. (*People* v. *Mayor, etc., of Brooklyn,* 4 N. Y., 419; *People* v. *Mitchell,* 35 id., 551; *People* v. *Flagg,* 46 id., 401; *Town of Guilford* v. *Sup'rs of Chenango,* 13 id., 143; *Town of Duanesburgh* v.

*Jenkins*, 57 id., 177; *Litchfield* v. *Vernon*, 41 id., 125; *People* v. *Mayor, etc.*, 63 id., 291; *People* v. *Sup'rs of Oswego Co.*, 57 id., 405; *People* v. *Sup'rs of Herkimer Co.*, 56 Barb., 454; *Brewster* v. *Syracuse*, 19 N. Y., 116; 11 Abb., 114; *People* v. *Haws*, 37 Barb., 455.) This act is not retrospective in any offensive sense in giving jurisdiction over a previously existing subject matter. (*People* v. *Sup'rs of Col. Co.*, 60 Wend., 363; *Lawrence* v. *Trustees, etc.*, 2 Den., 583; *Bullock* v. *Boyd*, 1 Hoff., 294; *Van Rensselaer* v. *Snyder*, 13 N. Y., 299; *Dickerson* v. *Cooke*, 16 Barb., 510; 7 Pet., 222; *Litchfield* v. *Vernon*, 41 N. Y., 135; *Town of Guilford* v. *Cooley*, 58 N. Y., 117; *People* v. *Sup'rs Col. Co.*, 43 id., 236.) Defendant refused to perform a legal duty imposed by the act (chap. 119, Laws 1873), in refusing to consider the claim of the relators. (56 Barb., 452; 51 N. Y., 405.) The relators had no other legal remedy. (*Swift* v. *Poughkeepsie*, 37 N. Y., 371; *Union Bk.* v. *N. Y.*, 51 Barb., 159; *Barrett* v. *Cambridge*, 10 Al., 48; *Lester* v. *Baltimore*, 29 Md., 415; *Ives* v. *Canaan*, 33 Conn., 402; 7 N. Y., 517; 5 Wend., 171; 30 Barb., 616; 7 id., 127; *Barboyte* v. *Shephard*, 35 N. Y., 238; *Dorn* v. *Buckner*, 61 id., 264; 1 Barb., 34; A. & A. on Corp., 699; *People* v. *Mayor of W.*, 10 Wend., 396; *People* v. *Brown*, 39 Barb., 537; *McCullough* v. *Mayor of Brooklyn*, 23 Wend., 457; *People* v. *Sup'rs of Chenango*, 11 N. Y., 574.) The act of 1873 (chap. 119) did not unduly restrain the discretion of the board of supervisors. (*People* v. *Sup'rs of Del. Co.*, 45 N. Y., 196; 51 id., 401; 46 id., 378.) Proceedings by mandamus, after a return had been made and issue joined, are to be considered actions. (*People* v. *Lumley*, 28 How. Pr., 159, 471; 35 Barb., 596.)

*Robert S. Hale*, for the respondent. If there had been an unjust double assessment in 1865 and 1866, the relator's claim for relief would be barred by the statute of limitations. (*Beach* v. *Reynolds*, 53 N. Y., 1, 10; *Martin* v. *Gage*, 5 Seld., 398; *Treat* v. *Fortune*, 2 Bradf., 116; *War-*

*ren* v. *Paff*, 4 id., 260.) The fact that the taxes were voluntarily paid, constitutes a complete bar to the relator's claim. (*N. Y. & H. R. R. Co.* v. *Marsh*, 2 Kern., 308; *Dorn* v. *Fox*, 61 N. Y., 264; *Sup'rs of Rich. Co.* v. *Ellis*, 59 id., 620, 624.) The "subject matter" of which the assessors had jurisdiction, was the land in their town. (*Mygatt* v. *Washburn*, 15 N. Y., 316; *Dorn* v. *Backer*, 61 id., 261; *People* v. *Sup'rs Chenango Co.*, 1 Kern., 563; *People* v. *Board of App'mt*, 64 N. Y., 627; *Marsh* v. *Town of Little Valley*, id., 112; *Newman* v. *Sup'rs Liv. Co.*, 45 id., 676; *People* v. *Assessors of Brooklyn*, 39 id., 81, 88; *People* v. *Assessors of Albany*, 40 id., 154; *Swift* v. *Poughkeepsie*, 37 id., 511.) The act of 1873 (chap. 119) was unconstitutional in that it deprived the parties in interest of their right to a hearing before a judicial tribunal, and in seeking to compel them to an enforced arbitration. (*Taylor* v. *Porter*, 4 Hill, 140, 146; *Wynshamer* v. *People*, 3 Kern., 378; *Embury* v. *Connor*, 3 Cosmt., 511; *Mid. R. R. Co.* v. *Van Horne*, 57 N. Y., 473; *Powers* v. *Bergen*, 6 id., 358; *Rockwell* v. *Nearing*, 35 id., 302; *People* v. *Haws*, 37 Barb., 440; *Davis* v. *Morris*, 36 N. Y., 569, 572; *Hudson* v. *Caryl*, 44 id., 553; *In re Townsend*, 39 id., 171, 179, 180; *Baldwin* v. *Mayor, etc.*, 2 Keyes, 387; *Weismar* v. *Village of Douglass*, 64 N. Y., 91.) The alternative writ contained no sufficient recitals or averments to entitle the relator to their peremptory writ. (*Com'l Bk.* v. *Canal Comrs.*, 10 Wend., 25; *People* v. *Ransom*, 2 Comst., 490, 492.) The act of 1873 (chap. 119) is not retroactive. (*People* v. *Carnal*, 2 Seld., 463; *People* v. *Suprs. Col. Co.*, 43 N. Y., 130; *Mid. R. R. Co.* v. *Van Horne*, 57 id., 473; *Benton* v. *Wickware*, 54 id., 226; *Armsby* v. *Huids*, 48 id., 57; *Ely* v. *Holton*, 15 id., 695; *Dash* v. *Van Kleeck*, 7 J. R., 477; *Wood* v. *Oakley*, 11 Paige, 400; Broom's Legal Maxims, 29.) The General Term did not err in awarding final judgment against the relator with costs. (*Edmonson* v. *McLeod*, 16 N. Y., 543; *Griffin* v. *Marquardt*, 17 id., 28.)

Folger, J. The respondents have the right to urge here, any consideration which they might have offered to the General Term ; and if it appears sufficient to maintain the conclusion to which that court has arrived, it will prevail here to uphold its judgment. (*Simar* v. *Canaday*, 53 N. Y., 298). It is needful, therefore, to consider all of the points made by them.

They first urge, that the remedy of the relators was complete and ample in another form. The basis of this contention is this : The furnace building and adjacent property having always in reality been in the town of Westport, the assessors of the town of Elizabethtown never had jurisdiction to assess it where it stood. From thence it is argued, that the relators had a right of action against the assessors of the latter town, personally, for the damages sustained by them ; and *Mygatt* v. *Washburn* (15 N. Y. 516), *Dorn* v. *Backer* (61 ib., 261), are cited ; and if they have this clear legal remedy by action, the proceeding by mandamus, it is said, is not appropriate or to be permitted. It should be remembered, however, that the relators are proceeding under a statute, passed in view of just such a state of circumstances as must exist to make the legal remedy of the relators clear against the assessors. That statute enacts, that in just such case, they may apply to the board of supervisors to obtain restitution. It is plain, that the statute was meant to provide a commulative, simpler and less expensive remedy, and one which would be more speedily effectual. When the tribunal which the statute created for the purpose, refused to act, a writ of mandamus was the appropriate means to set it in motion. There was no other remedy for the relators against the board of supervisors ; the tribunal which the statute had provided for them.

It is further urged that the act under which the relators proceeded is void, as in violation both of the Constitution of the United States and of this state. It is alleged that it deprives the parties in interest of a right to a hearing before a judicial tribunal, and compels them to an enforced arbitration. The follow-

ing parts of the United States Constitution are cited : First. (Art. 1, § 10, sub. 10) " No state shall * * * pass any * * * law impairing the obligation of contracts. Second. No person shall * * * be deprived of life, liberty or property without due process of law." We are at a loss to perceive, how this statute in any manner affects any contract, or at all touches upon it, much less how it impairs the obligation of a contract. Nor do we see how any town is to be deprived of its property without due process of law. The purpose of the writ is to set in motion the board of supervisors. When that board proceeds, it will or should give a day in court to the relators and the towns, and hear and consider the allegations and proofs of both parties. If it does this, upon reasonable notice, that is the due process of the law. If it does it not, then and not until then, the towns may well urge that they have been affected judicially without due process of law. The Legislature has the right to take away a particular form of remedy, or to give a new one. What is required of such legislation is, that there must be " hearing before condemnation, and judgment before dispossession." Due process of law requires, that a party shall be properly brought into court, and that he shall have an opportunity when there, to prove any fact which, according to the constitution and the usages of the common law, would be a protection to him or his property.

The citations from the constitution of this State, are : First. Art. 1, §§ 1, 2, 6; Second. Art. 3, § 23 (once § 17); Third. Art. 6, § 19. The phrase, " the law of the land " in § 1 of Art. 1, is not materially different in meaning from the phrase " due process of law," just considered. The second section of Art. 1 relates to the trial by jury, and preserves it, in all cases in which "it has been heretofore used." Now it has long been the legalized practice in this State, for the boards of supervisors to audit the charges against towns, and to levy and assess taxes for the payment of the same, and to cause such taxes to be collected from the property owned in the towns. (1 R. S., p. 307; 1 R. S., p. 137.)

So that in such case, the trial by jury may not be said to have been heretofore used.

Doubtless, the question whether the relators have a claim for moneys by reason of a double taxation of their property, is judicial in its nature. No more so though, than the claim of a constable for fees for services in criminal matters, nor than any other claim for what are usually named town expenses, and which are passed upon every year by boards of supervisors, allowed or rejected or abated; and if allowed, paid from taxes levied, assessed and collected from the property owned in the towns. If there has, in this case, been a double taxation, then the relators have paid moneys to one or the other town, through its collector of taxes, which it was unjust that they should have paid. It is manifestly right that the amount of that double taxation should be re-paid. It is manifestly right that the town and all its property-owning inhabitants, should re-pay it, rather than the assessors, who acted as public officers, and are not charged with any malice or willfulness, but only with innocent error. It was doubtful whether the relators could maintain an action against the town. The Legislature stepped in and said, that the town should be liable, and that such liability should be enforced in the way prescribed by this statute. The act affixing the liability is sustainable upon the principle declared in *Guilfred* v. *Sup'rs. of Chenango* (3 Kern., 143). The way of enforcing it we have just considered. All that is confided to the boards of supervisors, is to determine the fact whether, through a dispute as to dividing lines, there has been a double taxation; and the further fact which town was in error. *The People* v. *Sup'rs. of Otsego* (51 N. Y., 401), seems in point. It may be more difficult to determine the fact in this case, than in that, but yet it is a judicial determination that is to be made, and of a question of fact. There the legal right had been determined, that is, that taxes should not have been assessed and collected upon United States bonds; and the question of fact remained to be answered, whether such taxes had been enforced. Here, the Legislature have

recognized the existence of a plain legal right, that no one should be assessed and pay taxes twice upon the same property. The question remains, whether in fact any one had been obliged to do so. In each case, the fact is to be determined that such a tax has been paid, and the amount.

It is true, that apart from the petition to the board of supervisors, the relators do not, in the alternative writ, aver any facts which make a case for them under the act of 1873. But that petition is incorporated into the writ, and made a part of it. We must consider it as if the allegations of the petition are made a part of the writ and are repeated in it. The defendants have not been misled or harmed. They took issue upon those allegations. They tried them before the referee. It is not like a case where nothing is found in the alternative writ which tends to make a title; and the reason why such a writ is not good is, that as the defendants may rightfully traverse nothing not found in the writ, he may be deprived of the opportunity of pleading to issue the very material facts. (*The King* v. *The Margate Pier Co.*, 2 B. & Ald., 221.) Here that difficulty does not now arise, and the reason of the rule has ceased to operate in this case.

The language of the act is, in a sense, retroactive. "To ascertain, fix and determine the amount to which any  *  * person  *  * is equitably entitled to receive back from any town." It speaks in the present tense, and in the present gives power to the supervisors to act on a case in the present existing; and as a case, though in the present existing (that is, when the statute was enacted), may have, and in many instances must have, existed before the statute, it does retroact to take in that case. We may look to the occasion of the enactment of a law, to assist us in determining its character as retro or pro-spective. (*People* v. *Suprs. Columbia Co.*, 43 N. Y., 130.) It is easy to perceive that the enactment before us, arose out of a real or supposed necessity, existing at the time of its passage, for an easy remedy, and an accessible tribunal already charged with

similar duties, so that speedily and conveniently and inexpensively, the questions involved in such a case as this might be determined. It was for cases then existing at the time the statute was made, that it was passed, as well as for those to occur thereafter.

The death of one co-partner among the relators, did not abate the writ. After return to an alternative writ and issue joined, the proceeding becomes an action. (*The People* v. *Lewis*, 28 How., Pr. R., 159, affirmed [ib. 470], in Court of Appeals.)

The question whether the statute of limitations had run against any of the items of the relator's claim, does not properly arise at this time. This proceeding is to set the defendants in motion merely; not to direct them what, or what not, to allow.

It now remains to consider, whether the evidence justified the findings of the referee.

It seems to be conceded by each party, that the town of Westport did not at any time assess any of the plaintiff's property west of the Judd and Arnold line. Then the claim of the relators must rest upon the allegation, that the town of Elizabethtown did assess some of that property lying east of that line. The testimony, if so it may be called, to this, is very far from satisfactory. From the report of the referee, wherein he has combined his reasons and his findings, we are able to see just what influenced his mind. Three things only are relied upon by him, for his finding of a double assessment. One, is the text of the assessment roll of the town of Elizabethtown, "I. O. T. west part, furnace lot No. 48, acres 90, value $35,000." The word lot does not appear on the roll, in the juxtaposition in which it does here. It is at the top of a column, in which the numbers of the lots are put. But in construing the roll, that word lot must be read as if it immediately preceded the number of the lot. It is then doubtful, whether the assessors meant the east part of the furnace proper, or the west part of that, which in common and abbreviated parlance is meant, when the word furnace

is used by the neighborhood. If men living about there should say: " Come, let us go up to the furnace," would they inevitably and invariably mean, that particular building, which, in the definition of the dictionary, was the furnace of the relators; or would they mean that locality, made up of the office, the store, the boarding-house, etc., etc., all of which made up the furnace property of the relators ?

Again, as we have written the extract from the assessment roll, might not the word furnace be applied as an adjective to the noun lot, and the roll read, when extended and expletives supplied: " Iron ore tract, the west part of the furnace-lot, No. 48, etc. ?" Then, the assessment was upon the lot upon which some part of this whole furnace property stood, and not upon the furnace building proper. The word is ambiguous, as it is found in the roll, and the way was open for testimony to explain it; but none was offered.

Another thing affecting the mind of the referee was the value placed by the assessors upon the property assessed. He calls it high, and says that no hypothesis will account for that valuation but that they took in a part of the furnace proper. We find no testimony in the case to show that a valuation of the property west of the Judd and Arnold line, as high as that made, would be beyond its real or assessable value.

Another thing, like the first-named, is that the part of the lot lying west of the Campbell line, has upon it no buildings or valuable improvements, and is comparatively but of little value. We find no proof of this, unless it is furnished by the map in evidence. On that there appear no buildings west of the Campbell line; but it does not appear from that fact that the ninety acres is not of great value. If the fact should be, that there was a valuable deposit of iron ore there, it might have value. The proof is silent upon these points. We may infer from the description of the lot, as in the " Iron ore tract," that the whole land about there was full of that ore, or supposed to be, and hence rated high in value.

· We are not able to find in the evidence, any on which the referee could base his finding, and the General Term was right in reversing the judgment rendered by him.

But the General Term should have granted a new trial. It is too much to say, that the relators may not, on another hearing, produce proof which will clear up the ambiguity in the roll, or will not show that the furnace proper and contiguous property on the west of it, and to the east of the Campbell line, was, in fact, assessed by the assessors of Elizabethtown.

· The judgment of the General Term should be modified, so that the judgment of the referee be reversed and a new trial ordered, with costs to abide the event.

· All concur.

Ordered accordingly.