## SUPREME COURT.

### THE PEOPLE OF THE STATE OF NEW YORK agt. THE NATIONAL FIRE INSURANCE COMPANY OF NEW YORK.

*Taxation of insurance companies under Laws of 1880 — Company not taxable on its receipts during the five months preceding the passage of act — Not taxable upon premiums received for insurance upon property without the state — nor upon premiums of insurance upon imported goods stored in bonded warehouses.*

In an action brought by the state against the defendant, a domestic corporation to recover eight-tenths of one per centum upon the entire amount of premiums received by it on its business done in this state during the six months ending the 1st day of July, 1880. The action being based upon the act (*Laws of* 1880, *chap.* 542) entitled "An act to provide for raising taxes for the use of the state upon certain corporations, joint-stock companies and associations." The act became a law and took effect immediately:

*Held, first,* that the act should not be so construed as to levy a tax upon the receipts of the defendant from its business during the five months preceding its passage.

*Second.* That the defendant is not taxable upon the premiums received for insurance upon property situate without the state.

*Third.* That the defendant is not taxable upon premiums of insurance upon goods imported from foreign countries, and stored in bonded warehouses.

*Albany Circuit, January,* 1881.

*William B. Ruggles,* deputy attorney-general for plaintiff.

*Joseph H. Choate,* for defendant.

WESTBROOK, *J.*— This is an action brought by the state against the defendant, a domestic corporation, to recover eight-tenths of one per centum upon the entire amount of premiums received by it on its business done in this state during the six months ending the 1st day of July, 1880.

The action is based upon the act (*chap.* 542, *Laws of* 1880) passed June 1, 1880, entitled "An act to provide for raising taxes for the use of the state upon certain corporations, joint-stock companies and associations," and upon the fifth section thereof, which provides: " Hereafter it shall be the duty of the president, secretary, or other proper officer of each and every insurance company or association incorporated by or under any law of this state, except life insurance companies, and purely mutual beneficial associations, whose fund for the benefit of members, their families, or heirs, is made up entirely of contributions of their members and the accumulated interest thereon, to make report in writing to the comptroller semi-annually upon the first days of August and February in each year, setting forth the entire amount of premiums received on business done in this state, by such company or association during the six months ending the preceding first days of July and January, whether the said premiums were received in money or in the form of notes, credits, or any other substitute for money, and every such corporation or association shall pay into the state treasury, at the dates aforesaid, a tax of

eight-tenths of one per centum upon the gross amount of said premiums."

The action presents three questions: First. Must the act be so construed as to levy a tax upon the receipts of the defendant from its business during the five months preceding its passage? Second. Is the defendant taxable upon the premiums received for insurance upon property situate without the state; and, third, is the defendant taxable upon premiums of insurance upon goods imported from foreign countries, and stored in bonded warehouses? These questions will be considered in the order just stated.

It is insisted in behalf of the state that the act speaks as of the day of its passage, June 1, 1880, and that when it says: "*Hereafter* * * * upon the first days of August and February in each year" a report shall be made "setting forth the entire amount of premiums received on business done in this state by such company or association during the six months ending the preceding first days of July and January," such language necessarily includes the business done during the five months preceding the passage of the act. If there were no words of limitation in this section, this construction would seem to be inevitable, and although such a result would work absolute injustice, it might be compelled, for it is undoubtedly within the power of the legislature to give to a law a retroactive operation. Such a construction, however, should not be adopted unless the language of the act necessarily requires it (*Dash* agt. *Van Kleeck*, 7 *Johns.*, 502; *People* agt. *Supervisors of Columbia County*, 43 *N. Y.*, 130; *People* agt. *Supervisors of Ulster County*, 65 *N. Y.*, 300, 306, 307; *Fire Department of West Troy* agt. *Ogden*, 59 *How.*, 21).

The construction claimed by the attorney-general, however, is rendered impossible by the word "semi-annually," which occurs in the section, and which is omitted in the statement just made of the attorney-general's position, as it also was in his submitted brief. The language does not require a report

to the comptroller upon every first day of August and September after the passage of the act, but such report is to be made "hereafter," that is to say, after June 1, 1880, "semi-annually upon the first days of August and February in each year, setting forth the entire amount of premiums received on business done in this state by such company or association during the six months ending the preceding first days of July and January." In other words, a report is to be made every six months after the passage of the act, "upon the first days of August and February in each year" showing the premiums received " during the six months ending the preceding first days of July and January." There was clearly no report called for on August 1, 1880, because six months had not then expired from the date of the passage of the act. To give effect to all the words of the section, it should be read so as to require the expiration of six months, at least, from the passage of the act before any report is called for, and as on August 1, 1880, that period had not elapsed, the first report due was February 1, 1881. If it be said that this construction causes the state to lose the tax upon the income of the company during the month of June, 1880, it is conceded that this is true, and the answer to that argument is that the one insisted upon in behalf of the people gives to the act not only a retroactive operation, and imposes a tax upon earnings prior to its passage, but it also violates the scheme, and the express letter of the law, by requiring one report two months after its passage, when no provision is made therefor, and plain words require every report to be semi-annual. If the legislature intended that the first report should be made on the first day of August, 1880, it should so have said. It is simply impossible to have a report made "semi-annually," after the passage of a law on June 1, 1880, which shall be rendered August 1, 1880. Six months must elapse before any report is due, and when that time has expired, the next condition of the law must be fulfilled by making it on the first day designated after the expiration of such term, which would be February 1, 1881.

This construction gives effect to all the language, whilst the other ignores a most important and significant word.

In the discussion of this question, another fact is to be borne in mind. It was conceded upon the trial that the defendant had, when the law under consideration took effect, paid all taxes for the year 1880. Indeed, every corporation to whom the act applies had been taxed for the year 1880. When the legislature used the word, " hereafter," upon which the argument of the attorney-general is founded, it spoke with a knowledge that the corporations for whom a new scheme of taxation was devised, had borne their share of public burdens. Could its members have intended to impose a double tax, by making the word " hereafter " refer to the day of the passage of the act ; or did they intend that it should refer to the years to come thereafter ? Manifestly the latter, because that construction is not only just, but required by the language used. This is shown by bringing the controlling words of the section in connection, and it would then read thus : " Hereafter, semi-annually, upon the first days of August and February, in each year, it shall be the duty of the president," &c., &c., " to make report in writing to the comptroller, setting forth the entire amount of premiums received on business done in the state by such company or association during the six months ending the preceding first days of July and January," &c. The plain meaning is, that in " each year hereafter," that is to say, in each year after the present year, " semi-annually, on the first days of August and February," a report shall be made as the act provides. No other construction, as has already been said, is possible, if effect is given to the word " semi-annually." The scheme of the act is a semi-annual report in every year thereafter, to be made on the first days of August and February, showing the receipts for the premiums received for each six months of the year preceding the first days of July and January, and to do this " *each* year " after the passage of the act, as its language requires, the first report must be made on or before February 1, 1881. This interpretation

of the law works no injustice, but on the contrary does complete justice to the state, which has already received the sum due to it for taxes levied for 1880, and it certainly is required to give to every word used its appropriate force.

The case of *Drexel & Co.* agt. *The Commonwealth* (46 *Penn.*, 31), cited by the representative of the attorney-general, does not sustain his position. The Pennsylvania statute (it was one in regard to brokers and bankers) became a law May 16, 1861, and in direct words required from every broker and banker in the state a return "on or before the first Monday of December next," but although the act required such first report to be made by the time just mentioned, and also one "on or before the same day in each year thereafter," which should "exhibit and set forth the full amount of his receipts from commissions, discounts, abatements, allowances and all other profits arising from his business during the year ending the thirtieth day of November preceding the date of such annual return," the court held "that the act was not retroactive in its effect, and that it did not apply to the transactions occurring in that part of the year ending the thirtieth day of November, which had already passed at the time of the enactment of the law."

The Pennsylvania case is directly against the interpretation of the attorney-general, even though the language of the New York statute was as explicit as he claims. Without accepting as sound the decision just quoted, when the words of the law were so very clear, it is nevertheless high authority to show with what reluctance courts give to legislative enactments a retroactive effect. The act under consideration is not so precise and definite as that of Pennsylvania as to the date of the first report. The time of the making thereof was in the latter distinctly stated, whilst in the former it is to be inferred from all the words used. It has already been shown that our statute, by its plain language, does not provide for taxation upon past business, but upon future transactions, by requiring a semi-annual report in every year

after the year of its passage, and this is so manifest, that without further discussion, I proceed to the second point which the action involves, and that is : Is the defendant taxable upon the premiums received for insurance upon property situated without the state ?

The answer depends upon the force of the words " received on business done in this state," the premiums paid to the company on which its reports must show.

It is true, that in one sense, all the business of an insurance company located in the state, is done within its borders. From its general office all its policies issue, and to it all premiums are returned. While this is so, however, it is also true that in ordinary conversation a distinction is made when we refer to the business of an insurance company, between policies issued upon property within and without the state. The former is generally spoken of as " business done in this state," and the latter as " business done without the state." Very plainly the legislature had this precise distinction in mind. If it had not, why were the words " received on business done in this state" inserted ? The construction of the attorney-general makes them useless, for it will require a report showing the premiums received upon all its business. Nay, the same section (the fifth), in which the words occur, also defines them, for after providing for a report from a domestic company, " setting forth the entire amount of premiums received on business done in this state," it also requires a report from " every fire or marine insurance company organized under the laws of any other state or country, and doing business in this state." If the argument of the attorney-general is true, that all insurance effected by a company is business done within the state in which it is located, without any regard to the location of the property insured, then the provisions of the same section in regard to the taxation of foreign companies " doing business in this state" would not be operative, because the transaction of such business here would be a legal impossibility. It is respectfully urged that

the argument answers itself ; that the legislature meant something when it used the words on which comment has been made, and that as a tax was imposed by it upon foreign companies doing business in this state, it supposed that other states and countries might impose similar taxation upon our corporations doing business within their borders, and that, therefore, they should be taxed here only upon "business done in this state," that is, upon premiums received on policies insuring property located within our own territory.

The third and remaining question is : Can the defendant be taxed upon premiums received for insurance upon goods imported from foreign countries, still in original packages and stored in bonded warehouses ?

In *Cook* agt. *Pennsylvania* (97 *U. S.*, 566), it was held : " 1. A tax laid by a state on the amount of sales of goods made by an auctioneer is a tax on the goods so sold. 2. The statute of Pennsylvania of May 20, 1853, modified by that of April 9, 1859, requiring every auctioneer to collect and pay into the state treasury a tax on his sales is, when applied to imported goods in the original packages by him sold for the importer, in conflict with sections 8 and 10 of article 1 of the Constitution of the United States, and therefore void, as laying a duty on imports and being a regulation of commerce."

The principle upon which this case, and several others cited by Mr. justice MILLER in his opinion, rests is, that though nominally the law imposes a tax upon the business of the auctioneer, such tax is really levied upon the goods, because the amount thereof is added to the price when sold. Precisely this reasoning applies to the case before us. The company taxed raises its insurance, and the owner of the goods increases his selling price, and by the sale thereof to others at the increased price, the goods are made to bear the burden. Assuming, then, as must be assumed, the case cited to be sound law, the conclusion follows that this tax cannot be upheld. If an auctioneer who sells imported goods cannot be taxed upon his sales, because such tax is really one upon

the goods sold, then an insurance company cannot be taxed upon premiums received for insurance on the same species of property, for that must also be a tax imposed by the state upon the property itself.

The same doctrine has also been held in this state by both the supreme court and the court of appeals, in *People* agt. *Moring* (47 *Barb.*, 642 ; 3 *Keyes*, 374), upon a statute identical, in the parties and transactions attempted to be taxed, with the Pennsylvania one which the supreme court of the United States pronounced invalid.

After a careful consideration of every question involved in this case, I am led irresistibly to the conclusion that the defendant is entitled to judgment.