THE PEOPLE OF THE STATE OF NEW YORK, APPELLANTS, *v.* THE NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, RESPONDENT.

SAME *v.* THE NATIONAL FIRE INSURANCE COMPANY, IN THE CITY OF NEW YORK, RESPONDENT.

*Taxation of corporations* — 1880, *chap.* 542 —*the object of the tax is sufficiently designated* — *Const., art.* 3, *sec.* 20 — *the first report is to be filed August* 1, 1880 — *only premiums received for insuring property situated in this State are taxable* — *the act is not void as regulating commerce, by taxing imports.*

The direction contained in section 9 of chapter 542 of 1880, imposing taxes upon certain corporations, providing that "the taxes imposed by this act and the revenue derived therefrom shall be applicable to the payment of the ordinary and current expenses of the State," is a sufficient designation of the object to which the tax is to be applied, to satisfy the requirements of section 20 of of article 3 of the Constitution.

The act was passed June 1, 1880, and took effect immediately. Section 5 provided that "hereafter it shall be the duty of the president * * * of each and every insurance company * * * to make report in writing to the comptroller semi-annually, upon the first days of August and February in each year, setting forth the entire amount of premiums received on business done in this State by such company or association during the six months ending the preceding first days of July and January," and then imposed a tax upon the gross amount of the premiums so received.

*Held,* that the act required a report to be filed on August 1, 1880, setting forth the premiums received from January 1, 1880, to July 1, 1880.

That the tax must be paid as well upon premiums received before as upon those received after the passage of the act.

That the words "premiums received on business done in this State," meant premiums received on property situated within this State.

That the fact that the act imposed a tax upon premiums received for insuring imports in bonded warehouses, still in the original packages, did not render it void as being a regulation of commerce and in violation of the Constitution of the United States.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The action was brought to recover the taxes imposed by chapter 542 of 1880, upon the defendant, a fire insurance company, which it had neglected and refused to pay.

*Leslie W. Russell,* attorney-general, for the people.

*Joseph H. Choate,* for the respondents.

LEARNED, P. J. :

The first question is whether chapter 542, Laws of 1880, is unconstitutional, in that it does not state the object to which the tax is to be applied. The language of the act is that the taxes " shall be applicable to the payment of the ordinary and current expenses of the State." Does that sufficiently state the object ? The answer must depend on the degree of particularity which is required by the Constitution. In two cases this clause of the Constitution has been construed. A tax to defray " the various contingent expenses legally chargeable " to the city of New York and such expenses as the said city " may in any manner sustain or be put to by law " was held to be constitutional. (*Sun Mutual Ins. Co.* v. *Mayor, etc.,* 5 Sandf., 10 ; affirmed, 8 N. Y., 241.) So too a law providing for a tax to be paid into the treasury of the State, to the credit of the general fund. (*People ex rel. Burrows* v. *Supervisors,* 17 N. Y.. 235.) Now the phrase, " ordinary and current expenses of the State " is as definite as the phrase, " the various contingent expenses legally chargeable " to a city, and is more definite than the phrase, " such expenses as the city may in any manner sustain or be put to by law." We think that the phrase " the ordinary and current expenses of the State " conveys a distinct idea of the object to which the money is to be applied.

It was so held in *People ex rel. West. Ins. Co.* v. *Davenport* (2d Dept., 25 Hun, 630). General words must necessarily be used, unless the act is to specify, in detail, every distinct expenditure which it was intended to cover. To do this would be useless.

The next question is on the meaning of section 5 of the act. The act was passed June 1, 1880, and took effect immediately. Section 5 declares that " hereafter " it shall be the duty of the president, etc., to make report in writing to the comptroller. This report is to be made semi-annually ; and it is to be made on the first days of August and February in each year. Now it seems to us that, as the 1st of August, 1880, is after the 1st day of June, 1880, this section, (unless something else be shown,) required the

defendant to make a report August. 1, 1880. The word "semi-annually" describes the frequency with which the reports are to be made.

That it is not inconsistent with a requirement that a report should be made August 1, 1880, appears by section 7. By this we can see that the legislature did not mean by "semi-annually" six months after the law was passed. The word is superfluous; just as it often is in bonds and mortgages; in which interest is agreed to be paid, semi-annually, on the first day of January and the first day of July, ·or the like. Section 5 continues to specify that the reports are to set forth the entire amount of premiums received, etc., "during the six months ending the preceding first days of July and January." Of course it is not impossible that, under a law, passed June 1, 1880 a report should be required August 1, 1880 of the business during the six months ending July 1, 1880. But it is urged by defendant that, as a tax is imposed on the gross amount of these premiums, the act must not be construed to operate retroactively on the premiums received from January 1, to June 1, 1880. The defendant urges that it is unjust to levy a tax, based on the amount of past earnings, even though that tax is payable in the future. But there is no want of analogous cases. The law of the United States which imposed an income tax was passed August 5, 1861. Its forty-ninth section imposed a tax of three per cent on the income of the year next preceding January 1, 1862, payable June 30, 1862. Thus it imposed a tax, expressly upon income received during a year, of which seven months had elapsed. The law of the next year passed July 1, 1862, which imposed a much larger tax, made the income of the year ending December 31, 1862 subject to that larger tax, payable June 30, 1863. Thus a new tax was imposed upon the income of a year, of which six months had elapsed.

The imposition of the tax is future. The return of income is but a means of fair adjustment. No reason is suggested why the legislature, in imposing a tax upon insurance companies, might not take any method, which it thought just, of apportioning the tax. Every tax which is imposed by a new law is, in a certain sense, a tax upon past earnings. Because all property may be said to consist, in some form, of past earnings. So that when the legislature, as it often

does, directs the levy of a tax of a certain rate upon property in the State, that property, in whatever form it may exist, must be, to a great extent, the accumulation of past earnings. And therefore according to the defendant's argument, the tax is, to that extent, retroactive. To say that a legislature could tax only such property as is earned after the law is passed which imposes the tax would evidently be incorrect. And to say that a law is retroactive which taxes any property, other than such as is afterwards earned, is we think, equally erroneous.

This question is not one of power, but of the meaning of the legislature. (*People ex rel. Peake v. Suprs.*, 43 N. Y., 130, at 136.) When courts have construed statutes as having no retroactive effect, they have usually done so, because any other construction seemed to work injustice. It can hardly be doubted that the plain language of section 5, unless there be some outside reasoning to change it, is that the companies are to make reports August 1, 1880, for the six months ending July first.

If we turn to sections 1 and 3 of the act, which provides for taxes on certain other companies, we find that these companies are to be taxed at a certain rate on their capital stock. This rate is to be determined by a valuation, if no dividend has been made, and by the dividends made within the year prior to November one. Now the requirement on those companies to make a report on the fifteenth day of November " thereafter " certainly includes November 15, 1880. And the first dividends which are to be reported are therefore those made from November 1, 1879, to November 1, 1880. A tax then is to be paid " of one-quarter mill upon the capital stock for each one per centum of dividend." (Sec. 3.) A dividend can justly be made only from earnings. Any dividend made between November 1, 1879, and June 1, 1880, was made from past earnings, that is, from earnings prior to the passage of the act. And these, as the defendants' counsel argues, may have been swept away by losses, or spent before the passage of the act. Yet a tax is laid which is based thereon. The defendants' counsel urges that, in these sections 1 and 3, the dividends are not taxed but are taken as a test of ability to pay. Nor in section 5 are the premiums specifically taxed. A tax is laid on the company and on all its property, the amount of which is based upon the amount of the premiums. In no case

under the act are the dividends or premiums themselves taxed. In all instances a tax is levied on the property of the company. The dividends in the one case, and the premiums in the other, are the measures of the liability to pay.

The same intent of the legislature is shown in sections 6 and 7, by which a tax is imposed on the earnings of railroad companies and similar corporations. The first return is to be made August 1, 1880, and is to include the earnings of the six months next preceding; of which four months are prior to the passage of the act.

This shows that the intention of the legislature was that this law, forming one scheme of taxation, should include past earnings in its estimate of the rate of tax imposed.

The defendants' counsel cites *People ex rel. Eastern Trans. Line* v. *Comr. Taxes* (1st Dept., January, 1882). That case, following a case in the Second Department, holds that chapter 542, Laws of 1880, included only State taxes, and did not interfere with the power of local taxation. The case, so followed, is *People ex rel. West. Ins. Co.* v. *Davenport.* If this view be sound, still we do not see how these decisions affect the question whether, as to State taxes, there could be any taxation after June 1, 1880, except under this act. Section 8 provides that the capital stock and personal property shall hereafter be exempt from assessment or taxation, except as in this act prescribed. There is no difficulty in applying this section to companies in any county of the State, other than New York. Because the work of assessment and taxation, except in New York, begins after June first. In no other county than New York had any company been assessed, or paid taxes, for the year 1880. We have no occasion here to decide as to the effect of that section 8 as to assessment and taxation in New York. Section 1 of chapter 332, Laws of 1881, has declared that they are not exempted. And section 2 has provided for the crediting to any company, taxable in New York, the amount paid by it, in case of taxation by both authorities.

We have already said that the construction claimed by the plaintiff does not make the law retroactive. But the opposite view is so strongly urged that it may be well to refer to the cases, cited by the defendant, to see how widely they differ from the present. *Dash* v. *Van Kleeck* (7 John, 502) (decided three to two) held that,

where there was an existing cause of action, a statute giving a new defense should not, without express words, be held to apply. *People ex rel. Peake* v. *Supervisors* (43 N. Y., 130) held that an authority given to supervisors by one section of an act, to raise money and pay bounties to volunteers, during the existence of the war, did not apply to soldiers who had previously enlisted. *People ex rel. Pells* v. *Supervisors Ulster County* (65 N. Y., 300); reversed (63 Barb., 83, *sub. nom. People ex rel. Pitts* v. *Supervisors*) and held, that an act for correcting of assessments was retroactive and did apply to the past as well as to the future. These are all the cases cited; and it will readily be seen that, as decisions, they do not sustain the defendant's argument in this case. In none of the statutes therein construed was there such a positive direction as is found in this case. "Hereafter it shall be the duty of the president, etc., * * * to make a report semi-annually upon the first days of August and February in each year."

The next question is as to the meaning of the words "premiums received on business done in this State." We think these words are properly understood to embrace only premiums on property situated within the State. We see no other fair construction. If a policy is issued here and sent to an agent in another State and the money is received by him, could that be said to be business done in the State? Or if the insured sent the money to the company would that alter the case? Taking the words in connection with those used as to foreign companies who are to pay a tax on "business transacted in this State," we think that the defendant's construction is correct.

Another question, less important in amount, but more important in the principles involved related to the tax upon premiums for insurance upon imports in bonded warehouses, still in the original packages. It is claimed by defendant that this tax is a violation of the United States Constitution. The case relied upon is that of *Cook* v. *State of Pennsylvania* (97 U. S., 566) in which it was held that a tax upon sales made by an auctioneer when applied to imported goods in the original packages was void, as a duty on imports and a regulation of commerce. It was held that a tax on the amount of the sales was a tax on the goods sold. And it was admitted by the defendant that, if this was a tax on the goods, it could not be maintained. The dif-

ference between that case and the present is that the contract of insurance is a mere personal agreement between the parties. It does not effect the title to the goods, or their carriage from one place to another. A part of the right of ownership is the right to sell. When, then, the owner of goods in the original packages is directly, or indirectly taxed for the privilege of selling, foreign commerce is interfered with. So a tax on the carrying of freight is a tax upon commerce. (*State Freight Tax*, 15 Wall., 232.) Such taxes affect, directly or indirectly, rights of ownership, which are the privilege of possession, of sale and of carriage. But a tax on insurance does nothing of that kind. Insurance is not a necessity to the dealing with property. One may own, sell and transport property without insuring it. The insurance is a mere bargain as to who shall suffer the loss, if the property be destroyed. And however common insurance may be, it still remains a merely personal obligation, not affecting the thing insured. In *Railway Receipts Tax case* (15 Wall., 284) it was held that a statute imposing a tax on gross receipts of railroad companies was not unconstitutional; even though those receipts were made up, in part, from freights on merchandise from one State to another. And in the dissenting opinion by the same justice who wrote the opinion in *Cook* v. *Pennsylvania* (*ut supra*), it is said that a railroad company differs from a corporation for banking, *insurance* and manufacturing purposes; that their business is only remotely or *incidentally* connected with commerce. (*Paul* v. *Virginia*, 8 Wall., 168; *Liverpool Ins. Co.* v. *Mass.*, 10 id., 566.)

For these reasons we think that the tax on premiums for insurance of goods in bonded warehouses was not a tax on imports or an interference with foreign commerce.

The judgment should be reversed and a new trial granted, costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and LANDON, JJ.

Judgments reversed and new trials granted, costs to abide event.