Grover, J.
The defendant’s counsel insists that this case comes within the rule that a servant cannot recover for an injury caused by the negligence of a fellow-servant employed by the same master, in the same general business. The case of the plaintiff differs from the cases to which this rule has been applied in this important fact: the deceased and switch-tender were not employed by the same master. The former was the servant of the New York and New Haven Railroad, and the latter of the defendant The presumption from the facts of this case is, that the defendant, for a compensation therefor, gave the New York and New Haven Company the right of running trains over its track, and agreed to provide switchmen and flagmen to attend upon such trains. The switchmen and flagmen furnished by the defendant for this purpose, were in no sense the servants of the New York and New Haven Railroad Company. The defendant would be liable to that company for their negligence. This case does not, therefore, come within any of the adjudged cases estab *130 lishing the above rule. I think it is not embraced by any of - the reasons upon which it 'is founded. One is to secure Vigilance" and care by each servant -in the discharge of his duty to bis employer. Whatever importance may be attached to this' is inapplicable to this case.- Another is to protect the employer from' the great hazards to" which he would otherwise be exposed: and' still' another, that the servant- may provide against risks of this character by his contract. This case 'does not fall within either; The deceased was as much a stranger to the defendant as any passenger in the train run by him, and I think,"entitled equally with them to protection against .the negligence of the defendant or its servants.
- 'Another question presented by the exceptions is,-whether the defendant- is liable to any one except the New York and, New Haven Railroad’Company, with which the contract was made. In the case of Thomas v. Winchester (2 Seld., 397), it was held by this court that a dealer in drugs, vending poison labeled as harmless medicine, was liable to a party who purchased from the innocent vendee, for an injury occasioned by its use.' The reasons assigned for the decision apply with equal ’ force to this case. Death, or great bodily harm, is. the natural and almost inevitable consequence of negligence in either case. Mischief, like that which actually happened, was to be expected from such negligence. In the case cited, Rugóles, J., refers‘with approbation to the distinction recognized in Longmeid v. Holliday (6 L. & Eq., 562), between an act of negligence imminently dangerous to life, and one not so; holding the party guilty liable in the former, to one not contracting with him, for an injury sustained thereby, but not in the latter. In the case last cited, Pabke, Baron, says: “If a stage-coach proprietor, who may have contracted with the master to carry his servant, is guilty of neglect, and the servant sustains serious personal damage, he is liable to him, for it is a misfeasance towards him, if after taking him as a passenger, the proprietor, or his servant, drives without due care, as it is a misfeasance towards every one traveling on the road. ' I think it a misfeasance in this case towards every one law *131 fully traveling over the defendant’s road to permit any portion of the track to be in a dangerous state. The safety of the public will be promoted by adopting such a rule. The consequences of negligence in all cases of this kind require the court to apply the rule adopted in Thomas v. Winchester. That rule holds the party liable for all injuries sustained by any one without fault, which were the probable consequences of his negligence, when such negligence was imminently dangerous to life. Such liability tends to promote caution in these transactions of such vast importance to the public. A contrary rule will induce carelessness and negligence. There was no error in that portion of the charge relating to the duty of the defendant to adopt new improvements, by which the danger of accidents would be materially diminished. (Hegeman v. The West. R. R. Co., 16 Barb., 353.)
The judgment should be affirmed.
Selden, J.
The accident out of which this case has arisen occurred to a train of ears belonging to the New York and New Haven Railroad Company, while running upon the defendants’ road, and was caused by the misplacement of the switch upon the latter road, through the negligence, as the jury have found, of the switch-tender employed by the defendants. The plaintiff’s husband, whose death was caused by the accident, was an engineer in the employment of the New York and New Haven Railroad Company; and the defence set up in the answer and insisted upon at the trial is, that the employees of the New York and Harlem Railroad Company, while engaged in passing the trains of the former company over that portion of the road of the latter which is used for that purpose, are to be regarded as the servants and agents of the New York and New Haven Railroad Company, and hence, according to the settled doctrine, that a principal is not responsible to one servant for an injury caused by the negligence of a fellow-servant, engaged in the same general business, the defendants are not liable.
*132 But it is obvious that this doctrine has no application whatever to the case. The rule applies only where the action is brought for an injury to a servant or agent against the principal by whom such servant was himself employed. There is no pretence that the deceased was in the employment of the Mew York and Harlem Bailroad Company, against whom this action is brought. If the defendants are right, then both he and the switch-tender whose negligence caused the injury, were servants of the Mew York and Mew Haven Bailroad Company, and not of the defendants. Had the action been against that company, the question as to the applicability of the doctrine referred to might arise, but here it cannot. As between the deceased and the defendants, no such relation as that of master and servant existed. The question between them, therefore, is the same as if the deceased had been a passenger upon the train to which the accident occurred, and the defendants can only succeed by showing that the switch- . tender was not, at the time of the accident, their servant, in . such a sense as to render them responsible to any third person for Ms negligence.
The act of March 29th, 1848, authorizes the Mew York and Mew Haven Bailroad Company to run their cars upon a section of the defendants’ road, upon such terms as may be agreed upon between the two companies. The precise nature of the arrangement made pursuant to tMs statute does not appear. But it is shown that all the switchmen and flagmen who attended to the trains of the Mew York and Mew Haven Bailroad Company, upon that section of the defendants’ road, were employed by the defendants; from which it is to be inferred that the contract between the two compames was such that the Mew York and Mew Haven Bailroad Company had nothing to do with the selection and payment of this class of employees. Of course, therefore, as between that company and the defendants, the latter would be responsible for the character and conduct of such employees, who, under such circumstances, must be regarded, as to all intents and purposes, their servants and agents, and not those of the *133 He.w Haven company, between whom and the employees no privity of contract whatever existed. If then there was nothing in the relations of these two companies to prevent the defendants from being liable directly to the Hew Haven company for the negligence of this class of agents, much less can they exempt themselves from responsibility to third persons.
The judge, therefore, was clearly right in charging the jury that if the injury was caused by the carelessness of the switch-tender, without negligence on the part of the deceased, the plaintiff was entitled to recover.
It is equally clear that he was right in that portion of the charge which related to the construction of the road. It was satisfactorily proved, that if what the witnesses call the frog and guard rail had been used at the place where the train ran off, instead of the short switch, the accident in all probability would not have happened. Hearly all the witnesses regarded the former as a valuable improvement upon the short switch, and as adding greatly to the safety and security of the trains. It had been adopted, according to the testimony, previously to the accident, upon nearly all the roads in the country, and had even been substituted, in many places, for the short switch upon the defendants’ own road.
It has been held that railroad companies are bound to avail themselves of all new inventions and improvements known to them, which will contribute materially to the safety of their passengers, whenever the utility of such improvement has been thoroughly tested and demonstrated. (Hegeman v. The Western Railroad Company, 3 Kern., 9.) Undoubtedly this rule is to be applied with a reasonable regard to the ability of the company,- and the nature and cost .of such improvements ; but within its appropriate limits it is a rule of great importance, and one which should be strictly enforced. A stronger case for the application of the rule than is here presented could scarcely arise. The improvement related to a part of the apparatus of the road which is the source of numerous accidents. Its utility was undoubted and the expense trifling. The defendants had themselves recognized its value. *134 If the principle should ever be applied; therefore, it should be applied here. The defendants were clearly in default for permitting the short switch to remain in use upon the road, especially at a place where there was a somewhat unusual complication of switches. The judge was fully warranted, therefore, in submitting this question of negligence to the jury, even if he would not have been authorized to assume, as matter of law, that the company had neglected their duty in this respect. The language in which this part of the charge was couched was appropriate, and I discover no error in it.
The judgment should be affirmed.
All the judges concurring,
Judgment affirmed.