BARTHOLOMEW FETES, RESPONDENT, *v.* ADELAIDE
VOLMER, APPELLANT, IMPLEADED WITH OTHERS.

*Surrogate — power of a surrogate, the successor of one who has admitted a will to pro-
bate, to certify a copy of the original will and to sign the record of probate — variance
between such copy and the record of the probate of the will.*

Where a will has been admitted to probate by a surrogate, a certified copy of the
original will on file in that office, made by a successor of the surrogate by whom
such will was admitted to probate, as well as the signature of such successor to
the record of the probate, of the will, are made valid by chapter 155 of the
Laws of 1890.

Where there is a variance between the record in the surrogate's office of a will
admitted to probate therein and the record in the office of the county clerk,
where a certified copy of such will has been recorded, the question as to which
record is correct may be determined by a resort to the attending circumstances.

APPEAL by the defendant Adelaide Volmer from an interlocutory
judgment of the Supreme Court, entered in the office of the clerk
of Erie county on the 30th day of April, 1890, with notice of an
intention to bring up for review, upon such appeal, an order made
at the Erie Special Term on the 21st day of April, 1890, and entered,
April 30, 1890, whereby the report of a referee, made in the

---

above-entitled action, was confirmed and an interlocutory judgment was directed to be entered; and also an order, made at the Erie Special Term on the 10th day of February, 1890, whereby it was "ordered that the judgment, entered on January 22, 1890, be, and the same is, hereby vacated," etc.

The action was brought to obtain a judgment of the court, first, establishing and adjudicating the respective rights of the several parties to the action, in and to certain real estate described in the complaint therein; and, second, ordering and directing that the said property be partitioned among the parties according to their respective rights, and in case a partition thereof could not be made that the same be sold.

The case was tried before a referee, who made a report as to the interests and rights in the premises of the several parties to the action, by which it appeared, among other things, that the plaintiff was the owner, under and by virtue of the will of his father, Louis Fetes, of an equal undivided one-sixth part of the real estate described in the complaint, and also of an equal undivided one-thirty-sixth part of the same as the heir-at-law of Celestine Fetes.

The principal question on this appeal related to the discrepancy existing between the record in the Erie county surrogate's office, of the will of Louis Fetes certified by one Abram Thorn, the successor of Charles D. Norton, the surrogate by whom such will was admitted to probate, and the record in the Erie county clerk's office of a copy of the original will recorded in that office, which copy was also certified by Abram Thorn and contained the name of Bartholomew Fetes as a beneficiary thereunder, which did not appear in the record of the will in the surrogate's office.

*Eugene V. Chamberlain*, for the appellant.

*Giles E. Stilwell*, for the respondent.

MACOMBER, J.:

On the former appeal in this case (reported in 28 N. Y. St. Rep., 317, and 8 N. Y. Supp., 294), it was held that a failure to serve properly two of the necessary parties for a complete partition of the premises described in the complaint was fatal to the interlocutory judgment, and such judgment was accordingly reversed. Since

that decision the insufficiencies in the practice have, apparently, all been supplied by proper appearances of absentees and otherwise, so that we have before us at the present hearing only one question of moment, and that relates wholly to the merits of the action.

The right of the plaintiff to maintain partition of the premises in question is denied by the appellant upon the ground that the plaintiff, at the time of the beginning of the action, had no title to or interest in these lands. All of the parties claim under Louis Fetes, who died on the 24th day of July, 1855, leaving a last will and testament disposing of both real and personal property, whereby he devised to his widow a life interest in the lands described in the complaint, with the remainder over to his children. The will was duly admitted to probate on the 26th day of December, 1855, by the surrogate of the county of Erie. The point in controversy is, whether the plaintiff was named in the will as one of the children of the deceased. The will was recorded in the surrogate's office some time between December 26, 1855, and December 31, 1855, when the term of the surrogate expired by limitation. His successor signed a certified copy of the will January 8, 1856, and annexed thereto a paper purporting to be a certificate to the effect that it had been so admitted to probate by his predecessor, and that the same was then on file in the Surrogate's Court. This instrument was recorded in the Erie county clerk's office in the year 1871, as a will of real estate. The original will was lost, and the question as to the contents thereof is to be determined mainly by the copy thereof as recorded in the surrogate's office, and the other copy thereof as recorded in the county clerk's office. The copy set out in the books of the surrogate omits the name of the plaintiff as one of the beneficiaries under the will, while the one recorded in the county clerk's office contains his name, with five others, all the children of the testator.

It is probable that the surrogate, being pressed for time, had not an opportunity, before surrendering his office, to compare the copy as it now appears in his book with the original. This assumption finds corroboration in the fact that such copy in the surrogate's book bore no certificate or mark showing that it had been compared with the original will. But the copy, as recorded in the county clerk's office, bears upon its face such evidence, as it has the usual certificate

annexed.. The attestation usually determines the question whether the document is the whole or a part only of the original. ( *Voris* v. *Smith*, 13 Serg. & R., 334.)

But it is claimed that the certificate of the surrogate was a nullity, inasmuch as the statute under which the same purports to have been given relates only to the certificates of the successors in office where there has been a vacancy, and that the appointees of the unexpired term alone are authorized to complete. the unfinished business of their predecessors (2 R. S., 223, § 11), while those succeeding by election for a full term have not such power. · It would seem that there was· an omission on the part of the legislature in not making the statute broad enough to cover the right of a successor by election to complete the unfinished business of his predecessor. It is probable, as the referee says, that the legislature in enacting this provision had in view the simple act of signing and certifying records and documents presumptively legal and valid. In other words, such power may have been assumed to have theretofore existed; and the object of this provision was simply to authorize the successor of a surrogate, whose office had been suddenly terminated by death, incapacity or removal, to continue and complete the business begun and pending before him.

. The provisions of the statute contemplated that every public officer should complete his official business before retiring at the end of his term. But it by no means follows that the surrogate had not the power to certify records which he found in his office. Under the Revised Statutes, as originally enacted, a surrogate could exercise no powers except those which were expressly conferred upon him. (2 R. S., 220, § 1.) By chapter 460 of Laws of 1837, however, these restrictions were removed, at least to some extent, and he was empowered to administer justice in all matters according to the provisions of the statutes of the State, and there were conferred upon him all the powers which were necessary and incidental to enable him to discharge the duties of his office. · (*Brick's Estate*, 15 Abb., 32.) He has the power to exemplify under his seal of office all transcripts of records, papers or proceedings therein, and the same must be received in evidence in all courts with the like effect as the exemplifications of the records, papers and proceedings of courts of record. (2 R. S., 221, § 6.) It is quite probable that the copy certified by the surrogate, and

which was recorded in the county clerk's office, was taken from the original will as filed, and not from a copy thereof as entered in the books of the surrogate.

So much only need be said upon the question of the probabilities as to which record was the true one, irrespective of the admissibility of either of them in evidence, whether as primary or secondary proof. Under 2 Revised Statutes (58, §§ 14 and 15), this record would not be admitted as primary evidence, inasmuch as it does not contain " the proofs and examinations so taken." (*Morris* v. *Keyes,* 1 Hill, 540; *Caw* v. *Robertson,* 5 N. Y., 132; *Hill* v. *Crockford,* 24 id., 128.) The enabling act, passed by the legislature in 1870, chapter 74, provides as follows: " Section 1. All acts hitherto, of surrogates and officers acting as such in completing, by signing in their own names the unsigned and uncertified records of wills, and of the proofs and examinations taken in the proceedings of probate thereof, before their predecessors in office, are hereby confirmed and declared to be valid and in full compliance with the pre-existing statutory requirements." This power, however, it will be observed, was restricted to cases where the record of the wills contained the proofs and examinations as required by the provisions of the Revised Statutes. (*Hill* v. *Crockford,* 24 N. Y., 128.) Whatever the insufficiencies of the enabling act of 1870 may be, no question can be made of the act of 1890, chapter 155, which confirms all acts of surrogates in certifying the records of their office, and the same clearly covers the record of the will in the case before us. While it is true this act was passed since this controversy arose, and even since the case was argued before this court, yet such are its comprehensive terms that it must be deemed to apply to all cases existing and undetermined in the courts. A statute commonly speaks only for the future, and where vested rights are involved the legislature cannot affect the past or the present, but there are many remedial statutes that mainly affect past transactions, and are enacted for that purpose. Statutes confirming illegal or irregular proceedings of various public officers are of this character, and can have no relation to other than past transactions. (1 Kent's Com., 455; *Foster* v. *Essex Bk.,* 16 Mass., 245; *Underwood* v. *Lilly,* 10 S. & R., 97; *People* v. *Supervisors,* 43 N. Y., 136; *People ex rel. Collins* v. *Spicer,* 99 id., 233.)

# FETES v. VOLMER.

Under these statutes the certificate, added to the record of the will in the surrogate's office, was confirmed, as also was his certificate that the will delivered to him by his predecessor as being the original will from which the copy was made, and upon the faith and credit of which he certified the copy. The copy of the will in the book of deeds seems to us to be precisely of the same degree of evidence as the copy of it in the record of wills, and that, under these enabling acts, they both became primary evidence of the contents of the will itself. No greater effect can be given to the one than is given to the other of these records. Each is a copy of the same will.

It is a noteworthy fact that there is no evidence that there was any purpose, on the part of the testator, to withhold from the plaintiff an equal share in the residuary estate after the expiration of the life interest of the testator's wife. This fact, therefore, coupled with the other, namely, that in the book of wills the record had not been signed, and so probably not compared with the original will, and the further fact that Bartholomew Fetes' name appears in the record as contained in the book of deeds in the clerk's office, presents a case where the more reasonable inference is that the plaintiff was, in fact, named in the will, and that, consequently, he can maintain this action. These irreconcilable documents present an instance of conflict of evidence only, and the case must be disposed of substantially in the same manner as other cases where the evidence is conflicting. Where two inconsistent copies of the same will, both duly certified, the one from the records of the surrogate's office and the other from the records of the county clerk's office, are in evidence, the original will being lost, and both parties to the controversy claim under the probate of such lost will, the court or tribunal passing upon the facts may resort to the attending circumstances, and if there is no other evidence, determine which record is the true one. Under this rule there is a clear preponderance of the evidence in favor of the plaintiff.

It follows, therefore, that the interlocutory judgment appealed from should be affirmed, with costs to the respondent.

DWIGHT, P. J., and CORLETT, J., concurred.

Interlocutory judgment appealed from affirmed, with costs to the respondent, payable out of the fund.