| 2 | 67 |
|---|---|
| 149 | 597 |
| 151 | 24 |

| 2 | 67 |
|---|---|
| 46a | 615 |

| 2 | 67 |
|---|---|
| 164 | 358 |

| 2 | 67 |
|---|---|
| 96a | ²534 |

The County of Madison, plaintiff in error *v.* Joseph Bartlett, defendant in error.

The People of the State of Illinois, plaintiffs in error *v.* Joseph Bartlett, defendant in error.

*Error to Madison.*

Interest is the legal damages or penalty for the unjust detention of money.
A county is not bound to pay interest on county orders.
A county order for "$16,50, or its equivalent in State paper," is an order for $16,50, or so many State paper dollars as will amount to that sum, at their current value.

These causes were tried upon an agreed case made by the parties, before the Hon. Theophilus W. Smith, in the Madison Circuit Court, at the October term, 1831, and judgments were rendered in favour of Bartlett.

A. Cowles, Edwards, and Prickett, for the plaintiffs in error, cited Acts of 1823, 210 § 19 and 20; Acts of 1827, 335, § 30 and 38(1); idem § 18 and 19; Acts of 1831, 126 ;(2) Acts of 1819, 299; 2 Am. Dig. 332; Chitty on Cont. 195; 2 Comyn

(1) R. L. 520, 522, § 30 and 38; Gale's Stat. 567, 568.
(2) R. L. 528, § 5; Gale's Stat. 573.

on Cont. 206, note; 3 Cond. Repts. 15; 1 Cond. Repts. 376; 2 do. 189, 195; Acts of 1827, 105, § 13.(1)

J. SEMPLE, for the defendant in error.

LOCKWOOD, Justice, delivered the opinion of the Court:(2)

These causes come into this Court, upon agreed cases from the Madison Circuit Court. Two questions are presented for our consideration : First, Is the County of Madison bound to pay interest on county orders, from their date until paid, drawn in the following manner, to wit: "September Term of the Commissioners' Court, 1822. Ordered that David Sweet be allowed $8 for eight days attendance, as Constable, upon the Circuit Court of Madison County, at May Term, 1820, as per order of the Circuit Court. Attest, Joseph Conway, Clerk." Second, Is said county bound to pay interest from date until paid, and advance on county orders drawn in the following manner, to wit : "December Term of the Commissioners' Court for Madison county, 1825. Ordered that William Moore be allowed the sum of One Dollar, or its equivalent, in State paper, for services as a Judge of a special election last month, as per voucher filed. Attest, Hail Mason, Clerk." Or, in other words, when State paper was worth, when the order issued, only one-third of a dollar, is the county bound, in discharge of such order, to pay three dollars in money, and interest on three dollars, from the date of the order until paid?

It appears from the agreed cases, that there was no money in the County Treasury from the year 1820, until the year 1830, during which time all the orders in controversy were issued. It further appears from the cases, that Bartlett was Treasurer of the county of Madison, and that as Treasurer, he settled with the sheriff, without the consent of the Commissioners' Court, and allowed him interest on specie orders, and interest and advance on equivalent orders, so that if he was justified in making the allowances of interest and advance, the county would fall in debt to the County Treasurer in the sum of $870,86, for which sum he would be entitled to judgment. But if the Court should be of opinion that the county was not bound to pay interest on specie orders, and advance and interest on equivalent orders, then, by the cases, the Court is to render judgment against Bartlett for $790. "It is further agreed by the cases, that the taxes for 1828 were due 1st December, 1828, the taxes for 1829 were due 1st March, 1830. It is also agreed that the said Treasurer paid in when due, 1st December, 1828, $871,06, which he had received from the sheriff on the tabular form for 1828, on which no interest or advance was claimed. That he also paid in, in like

(1) R. L. 168, § 13; Gale's Stat. 197.
(2) SMITH, Justice, dissented from the opinion of the Court.

manner, on the tabular form of 1829, $726,80, on which no interest or advance was claimed." Other stipulations and facts are contained in the agreed cases, which it is not material to notice.

Is a county bound to pay interest on county orders, from the day of their issuing until paid? In order to a full understanding of this question, it will be proper to enquire into the nature of the indebtedness of the counties, which require the issuing of the orders in question.

By law, the counties are compelled to allow county officers compensation for their services, which are generally fixed and ascertained; but the greatest portion of their indebtedness arises from contracts to build and repair court-houses, jails, and bridges, and for supporting paupers. For these and similar county expenses, it is evident that the county has no fixed or settled rule to regulate the amount it will have to pay. In these cases, the sum agreed to be paid will necessarily depend, in a great measure, upon the time that will probably intervene between the period of rendering the labor or services, or furnishing materials, and the payment of the money. If payment is likely to be delayed for a long and uncertain time, the county will be under the necessity of agreeing to pay a much higher price for labor, services, and materials, than it would if it were certain that the money would be in the treasury, when the time of payment should arrive. Consequently the price of labor or property will always be in proportion to the risk and delay of payment. It is also proper here to enquire, what is meant by the word "interest?" At common law, interest is the consideration or price that is agreed between parties, to be paid for the use of money for a stipulated time. At common law, if no agreement for interest be made, it cannot be recovered, although the payment of the debt should be unreasonably delayed. The following case settles this principle, to wit: the case of Challie *v.* the Duke of York; K. B. Sittings after Easter Term, 46, Geo. 3d, at Weston, MSS., which was an action of assumpsit for wine sold and delivered, and for money due on an account stated. On the trial, it was proved that the wine was delivered in the year 1799, and in the year 1800 the account was stated and settled by an agent of the Duke, and the sum of £300 was admitted to be due to the plaintiff. Upon this evidence the counsel for the plaintiff claimed interest upon this sum from the time of the settlement of the account, to the day on which the plaintiff would be entitled to final judgment; and in support of this claim a case in 3d Wilson's R. 205, was cited. But Lord Ellenborough, Ch. J., before whom the case was tried, said, "Interest is never allowed for goods sold, or on an account stated, except there be an express agree-

ment, or the money is to be paid on a particular day; and I believe the case cited has never been acted upon."(1)

This case, decided by Lord Ellenborough, is precisely analogous to county orders. These orders are a mere liquidation of the sum due, on a settlement of accounts against the county, but without fixing any time for payment. They are, therefore, only to be considered as an authority for the holder to receive the money whenever it is in the County Treasury. To remedy this defect of the common law, interest is given by statute in certain specified cases, from the time that the debt becomes due, until payment is actually made. Hence statute interest may properly be defined to be the legal damages or penalty for the unjust detention of money.

From this view of the subject, it will appear that in the greater part of the cases where counties contract debts and issue their orders for payment or compensation, the probability of delay or uncertainty in the time of payment, has been estimated in the enhanced price agreed on for the services, work, or materials contracted for. In all such cases, then, it would be manifestly improper to allow interest; for interest by statute, is allowed as damages for the unjust detention of money; and here these damages have been considered by the parties, in the extra price agreed on. But as it is not in the power of this Court to discriminate between the cases where the order was drawn for services to which the law affixed a stipulated price, and where the county contracted with individuals upon such terms as could be agreed upon; it becomes the duty of the Court to decide this question upon legal principles. It is, however, to be regretted, that the Court, in their researches, have been able to find but one adjudged case that is in point. It is true, that some cases were referred to in the argument, as authorities, to show that in some of the States, interest had been allowed against the State. One of these cases was for money lent the State, on an express contract to pay interest; another was to recover from the State, on a breach of warranty contained in a deed, and was decided upon principles applicable to that description of cases. In the third case, the facts are too loosely stated, to furnish us with the reasons of the Court for allowing interest; consequently, these authorities can have no application here. This dearth of analogous adjudged cases, renders it the duty of the Court, to apply such general principles to the case, as they shall deem apposite.

It is a principle of the common law, that the government, and by parity of reasoning, a county, cannot be guilty of laches. It is also well settled, that a State is not barred by a statute of limitations, unless expressly named. Interest is not given by the common law, for a failure to pay money when it is due,

(1) 2 Comyn on Cont. 206, Note.

unless the parties have so agreed, and is only allowed by statute when the party neglects to pay at the time stipulated, and is then given, in the nature of a penalty for the violation of a contract.(1) Apply these principles to the question under consideration. The law does not impute laches, or even improper conduct, to a State or county, and hence it will not presume that the county has not done every thing within its power to enable itself to comply with its contracts and duties. Nor will the law inflict a penalty, or give damages, against a county for not paying its debts, when it is manifestly out of its power to do so. Counties are limited corporations, and can only levy a tax to a limited amount. When the law gives a penalty or damages against a corporation, or even against an individual, for the nonperformance of a given action or duty, it is done to stimulate and quicken the performance of a reasonable and possible thing. The law never gives a penalty, or even damages, for the nonperformance of impossibilities. Again, the statute of this State, which allows interest to creditors "for all moneys after they become due," does not by name include the State or counties. From this omission, is it not fairly inferrible, that had the legislature intended to compel the State or counties to pay interest where they have not contracted to do so, that they would have been specially named? This inference is strongly supported by the fact that the legislature in 1819, passed a statute requiring interest to be paid on Auditor's warrants. If Auditor's warrants bore interest by the general statute regulating interest, this special act would have been unnecessary. The general practice of the community, is also some evidence of what the law is on a given subject. Has interest, then, been generally allowed on county orders? We understand not. And it appears from the agreed cases, that on the orders received by the sheriff, of the people in payment of taxes, (which by law he was compelled to put down in a tabular form, and to pay the identical orders so received, into the County Treasury,) the sheriff did not allow interest to the persons of whom he received them, nor did he claim it of the Treasurer. Is not here strong evidence, not only of the understanding of the people that these orders did not bear interest, but an implied admission by the Treasurer and sheriff, that the law did not allow it. If the law had allowed interest on these orders, it was the duty of the sheriff to have allowed it to the tax payers. The only adjudged case, analogous to the present one, that is recollected by the Court, is the case of Beaird *v.* the Treasurer of this State, decided at the June term of this Court, 1825. In that case Beaird applied to the Court for a mandamus to the Treasurer, requiring him to pay interest on Auditor's warrants, which motion was refused upon

(1) 3 Atkins 636.

the principles above laid down, that the State was not bound to pay interest unless in cases where she had contracted to do so. From the best consideration that we have been able to give this subject, we can come to no other conclusion, than that a county is not bound to pay interest on county orders, in the absence of an express contract to pay it. The Court, in coming to this conclusion, do not intend to controvert the position, as a general rule, that a party is bound, in conscience, to pay interest, whenever he withholds payment of a liquidated sum of money, after it becomes due; but insist that the rule, for the reasons before given, does not apply to the State, or either of its counties. It might also with propriety be insisted, that the financial means of the respective counties to discharge their contracts, were or could have been known by those persons, who, either as officers or individuals, became creditors to the county. They may therefore be presumed to have consented to receive the payment of their claims, whenever the revenues of the county would enable it to pay its debts. If this is a reasonable presumption, and it seems to be, then the time of payment of these county orders did not arrive until there was money in the treasury to pay them; and provision is made by statute to pay orders according to their seniority.

The second question presented for our consideration, is whether Bartlett was justifiable in allowing to the sheriff the advance he did, on the equivalent orders? In order fully to understand the effect of the settlement made by these officers, I will take the first order mentioned in exhibit A, and made part of the agreed case. The order was issued at the June term, 1825, for $16,50, equivalent to $49,50; interest on the equivalent, $14,10, making $63,60. Here, then, is a county order, issued in June, 1825, for $16,50, converted by this magical word "equivalent," within five years, to the sum of $63,60. Can it for a moment be supposed that the Commissioners for the county of Madison contemplated binding their county to pay such an enormous advance on so small an amount? The very statement of the case is sufficient to show the absurdity of such a supposition; and even if they had made such a contract, it would have been so improvident an act on the part of the county, that a court of equity would have set it aside. But the County Court made no such contract as to justify the allowance made by the Treasurer to the sheriff. The order simply means, that when it is presented for payment, if the Treasurer is under the necessity of paying it in State paper, then he shall pay the State paper to the holder of the order, at the market price of State paper. It was optional with the county either to pay the $16,50 in specie, or if the amount was paid in a depreciated currency, then that currency was to be paid at such a rate as to make it equivalent to specie. If A

execute his note for one hundred State paper dollars, and he is sued on it, all that can be recovered is the value of one hundred State paper dollars when the note becomes due, and interest on that value till judgment. Such have been the uniform decisions of the Circuit Courts upon this subject, and the correctness of the decisions have never been questioned. That the real amount mentioned in these orders could only be recovered, seems so clear, that it would be a waste of time to consider the question any further.

The Court, therefore, are of opinion that in the case of the People for the use of Madison County, they are entitled to have the judgment below reversed, and recover against Bartlett the sum of seven hundred and ninety dollars, with costs, and that the judgment in the case of Madison County *v.* Bartlett, be also reversed with costs, and that the causes be remanded to the Madison Circuit Court for judgment, according to the stipulations of the agreed cases.

*Judgment reversed.*