Argued 27 December, 1898; decided 16 January, 1899.

## SETON v. HOYT.

[43 L. R. A. 634; 55 Pac. 967.]

1. COUNTIES—LIABILITY FOR INTEREST.—A county is only an arm or agent of the state, and consequently is not liable for interest under a general statute regulating that subject, but only when expressly named, so that a county is not liable for interest under Section 3587, Hill's Ann. Laws, it not being mentioned therein.

2. INTEREST ON CONTRACTS.—Contracts stipulating for interest will draw interest at the agreed rate, or the statutory rate prevailing at the date of the instrument, until final payment, without regard to any intermediate change in the law.

3. INTEREST ON COUNTY ORDERS—IMPLIED CONTRACT.—Under Hill's Ann. Laws, § 2465, providing that the county treasurer shall pay all orders of the county clerk when presented, if there is money in the treasury for that purpose, but if not, he shall indorse thereon, "Not paid for want of funds," which shall entitle such order thenceforth to draw legal interest, two implied contracts are engendered, viz.: that the holder of the order will wait for payment until sufficient money has been accumulated in the usual course of public business to pay the claim, and that the county will pay the legal rate of interest upon the order.

4. RATE OF INTEREST ON COUNTY ORDERS.*—The rate of interest on county warrants indorsed "Not paid for want of funds" is the rate prevailing at the date of such indorsement, and cannot afterward be reduced.

5. IMPAIRING OBLIGATION OF CONTRACT—COUNTY ORDER.—The implied contract to pay interest arising from the nonpayment and indorsement of a county order is protected against impairment by Article I, Section 10, of the United States Constitution.

6. CONSTRUCTION OF STATUTE.—It is a general rule that laws are to be considered as prospective and not retrospective in their application unless the contrary clearly appears from the act and the surrounding circumstances.

7. IDEM.—Act of October 14, 1898, changing the rate of interest, is not extended to outstanding warrants by the provision that, "inasmuch as the counties * * * are paying interest on their county warrants at the rate of eight per cent. per annum, thereby imposing a useless burden upon the taxpayers, this act shall become a law upon receiving the signature of the Governor."

## From Multnomah: ALFRED F. SEARS JR., Judge.

---

*NOTE.—A precisely similar case is *Union Savings Bank* v. *Gelbach* (Wash.), 24 L. R. A. 359.

The question of the right to change the rate of interest on a judgment is considered in a note to *Rockwell* v. *Butler*, 17 L. R. A. at p. 612, in a note on whether a judgment is a contract.—REPORTER.

Mandamus by Waldemar Seton against Ralph W. Hoyt, county treasurer, to compel payment of interest on a county warrant at the rate fixed by statute when the claim accrued, the treasurer having reduced the rate when a new statute went into force, whereby the legal interest was changed from eight to six per cent. The writ was made peremptory, and defendant appealed.

AFFIRMED.

For appellant there was an oral argument by *Mr. Roscoe R. Giltner*, with a brief over the names of *Russell E. Sewell*, District Attorney, and *Roscoe R. Giltner*, to this effect:

The state guarantees to pay the legal interest on all orders, from the date of their presentment and indorsement; but it does not agree to pay on these particular orders, or any order, any specified rate of interest so as to make it a part of the obligation of the contract; but inasmuch as the order is received, payable at the legal rate of interest established by the legislature, there is an implied reservation in the contract as made (if it is a contract) that he shall receive such rate of interest on the obligation as the wisdom of the legislature and public policy may dictate.

The holder takes it with notice that public policy may demand a change in the legal rate of interest which from time to time may be in force during the existence of the obligation to pay. We consider the case at bar analogous to cases in regard to the liability of sureties on official undertakings, where new duties are imposed upon public officers without thereby relieving the surety; we submit that the interest allowed on a county warrant or order is given by way of a penalty or damages for the delay in payment of the money due upon the debt, and that the legislature has the power to vary this at any time.

We claim that the phrase "thenceforth draw legal interest" of the law, as amended in 1893 (Session Laws, 1893, p. 59), regulating the rate of interest on county orders, in the light of the law itself, contemplates and is notice to a person purchasing one of those orders, that the rate of interest on the order varies as the legal rate is changed by legislation: *Stark* v. *Olney*, 3 Or. 90; *People* v. *Vilas*, 36 N. Y. 459; *Chadwick* v. *United States*, 3 Fed. 750; *Kruttschmitt* v. *Hauck*, 6 Nev. 163; *Board of Education* v. *Quick*, 99 N. Y. 138; *Dawson* v. *State*, 38 Ohio St. 1; *Morley* v. *Lake Shore Ry. Co.*, 146 U. S. 162. Dissenting opinion of HOYT, J., in *Union Sav. Bank* v. *Gelbach*, 8 Wash. 502 (24 L. R. A. 359).

A county order is not a contract to pay money; it is nothing more than an order by the officers of one branch of the county on another of its officers to pay money to a third person; it contains none of the elements of a contract: *Allison* v. *Quinata County*, 50 Pa. St. 351; *Dyer* v. *Covington Township*, 7 Harris, 200.

A county is not liable to pay interest upon a county order: *Madison County* v. *Bartlett*, 1 Scannon (Ill.), 67.

For respondent there was an oral argument and a brief by *Mr. William A. Cleland*, to this effect:

The warrants are a legal and valid claim against Multnomah County. They become non-negotiable promissory notes, or contracts of Multnomah County: *Frankl* v. *Bailey*, 33 Or. 285.

Where the right to interest is based upon contract, either expressed or implied, if allowed by the statute then in force, it cannot be impaired by subsequent legislation declaring their true intent and meaning. Such legislation can only apply to future transactions: *Koshkonong* v. *Burton*, 104 U. S. 668, 26 L. ed. 886.

The constitution makes no distinction between express and implied contracts : *Edwards* v. *Kearzey*, 96 U. S. 600, 24 L. ed. 796 ; *Effinger* v. *Kenney*, 115 U. S. 566, 29 L. ed. 495 ; *Fisk* v. *Jefferson Police Jury*, 116 U. S. 131, 29 L. ed. 587.

A warrant is a contract to pay money, and the legal rate in effect at the time enters into the contract as a part thereof, and cannot be affected by a subsequent law reducing the rate : *Union Savings Bank* v. *Gelbach*, 8 Wash. 497 (24 L. R. A. 359); *State ex rel.* v. *Bowen*, 11 Wash. 432 ; Dillon, Mun. Corp. §§ 485-487 ; Daniel, Neg. Inst. §§ 427-430.

Where an ordinance provides for interest on warrants upon which payment has been refused by reason of want of funds, the liability of the city is not affected by the repeal of the ordinance : *Scranton* v. *Hyde Park Gas Co.*, 102 Pa. 382.

The law existing when a contract is made is a part of it : *First National Bank* v. *Arthur*, 10 Colo. App. 283 (50 Pac. 738).

A statute should not receive such a construction as to make it impair existing rights, create new obligations, or impose new duties in respect of past transactions, unless such plainly appears to be the intention of the legislature : Sutherland, Stat. Const. § 464 ; *Green* v. *Anderson*, 39 Miss. 359 ; *Crigler* v. *Alexander*, 33 Gratt. 674 ; *Campbell* v. *Nonpareil Fire-Brick Co.*, 75 Va. 291 ; *Moon* v. *Durden*, 2 Exch. 22 ; *Dash* v. *Van Kleeck*, 7 Johns. 477 (5 Am. Dec. 291); *Wood* v. *Oakley*, 11 Paige, 400 ; *Johnson* v. *Burrell*, 2 Hill, 238 ; *Butler* v. *Palmer*, 1 Hill, 324 ; *Snyder* v. *Snyder*, 3 Barb. 621 ; *Hackley* v. *Sprague*, 10 Wend. 114 ; *McMannis* v. *Butler*, 49 Barb. 176 ; *Re Protestant Episcopal Public School*, 58 Barb. 161.

Upon a contract which stipulates for interest either at the agreed rate, or, in the absence of an agreed rate, the

rate prescribed by law at the date of the contract, will be
the rate recoverable until the payment of the principal
sum : *Spencer* v. *Maxfield*, 16 Wis. 179.

A judgment with interest at the legal rate affirmed by
the supreme court is not affected by subsequent legisla-
tion reducing the legal rate of interest, unless the statute
so declares : *Missouri Pacific Ry. Co.* v. *Patton* (Tex. Civ.
App.), 35 S. W. 477 ; *Butler* v. *Rockwell*, 17 Colo. 290 (17
L. R. A. 611, 29 Pac. 458.)

Laws should be construed prospectively and not retro-
spectively, unless the intention clearly appears from the
statute : *Bauer Grocery Co.* v. *Zelle*, 172 Ill. 407 (50 N.
E. 238) ; *Robinson* v. *Rowan*, 3 Ill. 499 ; *Marsh* v. *Chestnut*,
14 Ill. 223 ; *Deininger* v. *McConnel*, 41 Ill. 227 ; *Russell
Drainage District* v. *Benson*, 125 Ill. 490.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is a proceeding by mandamus, the purpose of
which is to determine whether the act of October 14,
1898, reducing the legal rate of interest, is operative upon
interest-bearing county warrants issued prior to its pas-
sage, so as to limit the interest thereon to the present rate
from and after said date. The act alluded to changes the
prescribed rate of interest from eight to six per centum
on all moneys after the same become due ; on judgments
and decrees for the payment of money ; on money re-
ceived to the use of another, and retained beyond a
reasonable time without the owner's consent, express or
implied, or on money due upon the settlement of matured
accounts from the day the balance is ascertained ; on
money due or to become due, where there is a contract to
pay interest, and no rate specified. It contains an emer-
gency clause reciting "that inasmuch as the counties of
the state are paying interest on their county warrants at

the rate of eight per cent. per annum, thereby imposing a useless burden upon the taxpayers, this act shall become a law upon receiving the signature of the Governor." Section 3587, Hill's Ann. Laws, of which this act is amendatory, is an amendment of section 1 of "An act to regulate the rate of interest on money and to prevent and punish usury," approved October 16, 1862 (Laws, 1862, p. 115). The original act contained a provision (section 6) which has been continued in force until the present day (Section 3592, Hill's Ann. Laws) to the effect that it shall not be construed so as to affect or change the rate of interest to be received by virtue of any contract entered into prior to its becoming a law. Section 2465, Hill's Ann. Laws, as amended (Laws 1893, p. 59), relating to the duties of the county treasurer, provides, among other things, that "He shall pay all orders of the county clerk when presented, if there be money in the treasury for that purpose, and write on the face of such order the date of redemption and his signature. If there be no funds to pay such order when presented, he shall endorse thereon ' Not paid for want of funds,' and the date of such presentment, over his signature, which shall entitle such order thenceforth to draw legal interest; *provided*, that such interest shall cease from the date of notice by publication," etc. By section 2467 county orders are redeemable by the county treasurer according to the time of presentment, but it is further provided that such orders as are payable out of the county revenue shall be received in payment of county taxes without regard to priority of presentment, but that the treasurer shall not pay any balance thereon over and above such tax, when there are outstanding orders unpaid for want of funds. These are the only provisions of the statute which have any bearing upon the case in hand.

1. Defendant's theory touching the controversy embodies three principal contentions : First, that the county is but an arm or agent of the state, and that the sovereign is not required to pay interest, except when self-imposed ; second, that a county order is not a contract between the county and the holder ; and, third, that interest, when demandable under the statute, except when due upon an express contract for its payment, is in the nature of a penalty or damages for the detention of money due and unpaid, and, therefore, that it constitutes a part of the remedy in the enforcement of the demand, which may be modified, or even repealed altogether, by subsequent legislation, without impairment of any contractual relations. In our view of the case, we do not conceive the second proposition to be important or essential to the determination of the cause. As to the first, we are in accord with the contention of counsel, but as to the last we cannot give it our approval. There is some conflict in the authorities upon the question whether a sovereign state is required to pay interest unless self-imposed, but the weight thereof seems to support the contention that it is not. The Supreme Court of the United States has adopted the rule that interest is not allowable on claims against the government, whether they originate in contract or tort, or arise in the ordinary business of administration, or under private acts for relief, passed by congress on special application. But it recognizes the existence of two well established exceptions—one wherein the government has stipulated to pay interest, and the other where interest is given by act of congress either expressly as such, or under the name of damages : *United States* v. *Bayard*, 127 U. S. 251 (8 Sup. Ct. 1156). In a subsequent case of *United States* v. *North Carolina*, 136 U. S. 211 (10 Sup. Ct. 920), Mr. Justice GRAY says : ''Interest, when not stipulated for by con-

tract, or authorized by statute, is allowed by the courts as damages for the detention of money, or of property, or of compensation, to which the plaintiff is entitled ; and, as has been settled upon grounds of public convenience, is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of the legislature, or by a lawful contract of the executive officers.'' The rule applies as well to a sovereign state as to the national government. Nor is the state within the purview of a general law regulating the rate of interest upon money due or to become due, and this goes upon the ground that a sovereign is not bound by the words of a statute unless it is expressly named : *State ex rel.* v. *Board of Public Works*, 36 Ohio St. 409 ; *Carr* v. *State*, 127 Ind. 204 (11 L. R. A. 370, 26 N. E. 778) ; *Attorney-General* v. *Cape Fear Nav. Co.*, 37 N. C. (2 Ired. Eq.) 444 ; *Bledsoe* v. *State*, 64 N. C. 392 ; *Town of Mt. Morris* v. *Williams*, 38 Ill. App. 401 ; *Madison County* v. *Bartlett*, 2 Ill. (1 Scam.) 67. That the county is but the agent or instrumentality of the state, constituted and employed essentially for the promotion of its general government, and, therefore, subject to like rules and restrictions governing its liabilities as the state, there can be no controversy : 1 Dillon, Mun. Corp., § 23. We take it, therefore, that a county is not liable for the payment of interest under the general provisions of the statute regulating the rate upon the demands enumerated in said section 3587 as an individual would be where there is no contract to pay interest.

As a general rule, it may be conceded that where the demand falls within the purview of the statute, and by reason thereof is subject to an interest charge at the legal rate, the rate upon the demand will vary as the law fixing it may be changed or varied by the legisla-

ture during the life of the demand. The reason of the rule is that the person from whom the money is retained or withheld is entitled to an indemnity for the loss which he sustains on account of being deprived of its use, and it is assumed that the legal rate of interest for the time of the withholding is a fair measure of damages by which to determine such loss, in the absence of any other method of arriving at the exact or precise loss actually incurred : *State* v. *Guenther,* 87 Wis. 673 (58 N. W. 1105); *Wilson* v. *Cobb,* 31 N. J. Eq. 91; *White* v. *Lyons,* 42 Cal. 279; *Mayor, etc.* v. *O'Callaghan,* 41 N. J. Law, 349.

Where there is an agreement to pay interest upon an obligation at a stipulated rate to a day certain—as, for instance, at maturity—and there is no engagement touching the rate the obligation shall subsequently bear, the authorities are in hopeless conflict as regards the rate of interest recoverable upon the deferred payment. They divide accordingly as it has become the settled policy of the courts touching the nature of the indemnity recoverable for the detention of the money beyond the day upon which it has fallen due and payable. Upon the one hand, it is held that such indemnity is purely a matter of damages, not in the least referable to the contract, although for breach thereof ; and that the proper and appropriate measure of such damages is the rate of interest which the law has prescribed. Upon the other, it is considered that, while the indemnity is recoverable as damages, yet the rate of interest which should be allowed is rather to be implied from the terms of the contract touching it prior to the maturity of the obligation. The idea is clearly expressed by Lord SELBORNE in *Cook* v. *Fowler,* L. R. 7 H. L. 27. He says : "Although, in cases of this class, interest for the delay of payment *post diem* ought to be given, it is on the principle, not of implied contract, but of damages

for breach of contract. The rate of interest to which the parties have agreed during the term of their contract may well be adopted, in an ordinary case of this kind, by a court or jury, as a proper measure of damages for the subsequent delay; but that is because, ordinarily, a reasonable and usual rate of interest, which it may be presumed would have been the same whatever might be the duration of the loan, has been agreed to:" *Price* v. *Railway Co.*, 16 Mees. & W. 244; *Morgan* v. *Jones*, 8 Welsb. H. & G. 620; *Keene* v. *Keene*, 3 C. B. (N. S.) 144—support this principle. Mr. Justice GRAY, while Chief Justice of the Supreme Court of Massachusetts, by a most exhaustive and learned opinion, in which he has collated and reviewed all the authorities pro and con, came to the conclusion expressed by the following language: "When a written engagement is made, as authorized by the statute, to pay a greater rate of interest yearly than six per cent., the intention of the contract and the effect of the statute appear to us to be that the creditor shall receive the stipulated rate of interest so long as the debtor has the use of the principal; and that, in an action upon the contract, the creditor shall recover interest at that rate, not merely until the time when the principal is agreed to be paid to him, but until it is actually paid, or his claim for principal and interest judicially established." Later he denotes the principal upon which it rests. He says: "The interest after the breach of the contract, though not strictly recoverable as part of the debt, but rather as damages, is ordinarily to be measured, according to the intention manifested by the contract, by the standard thereby established:" *Union Inst. for Savings* v. *City of Boston*, 129 Mass. 82 (37 Am. Rep. 305). See, also, *Brannon* v. *Hursell*, 112 Mass. 63.

2. Although the Supreme Court of the United States is

committed to the other view, yet it is there held that the question is one of local law. Mr. Justice FIELD, in *Cromwell* v. *Sac County*, 96 U. S. 51, after holding, in accord with the Iowa courts, that contracts drawing a specified rate of interest before maturity draw the same rate afterwards, and citing other authorities in support of the rule, says : "There are, however, conflicting decisions; but the preponderance of opinion is in favor of the doctrine that the stipulated rate of interest attends the contract until it is merged in the judgment." Without further citation of authorities, we may say that the later tendency of the courts is in favor of the rule as announced in *Union Inst. for Savings* v. *City of Boston*, 129 Mass. 82 (37 Am. Rep. 305), and *Shaw* v. *Rigby*, 84 Ind. 375 (43 Am. Rep. 96, 27 Alb. Law J. 154); and it is the one which appeals most strongly to our judgment. In consonance with this view it is said in *State* v. *Guenther*, 87 Wis. 673, that "on a contract which stipulates for interest, interest at the agreed rate, or, in the absence of an agreed rate, at the rate prescribed by the law at the date of the contract, will be the rate recoverable until the repayment of the principal sum. A change of the legal rate would not affect the rate of interest recoverable upon such a contract,"—citing *Spencer* v. *Maxfield*, 16 Wis. 178. So it was held in *Pruyn* v. *City of Milwaukee*, 18 Wis. 386, that city bonds conditioned for the payment of the principal at a specified day, with interest above the legal rate, continued to draw the stipulated rate after maturity. And EARL, J., in *O'Brien* v. *Young*, 95 N. Y. 428 (47 Am. Rep. 64) states the rule to be that "where one contracts to pay money on demand 'with interest,' or to pay money generally 'with interest,' without specifying time of payment, the statutory rate then existing becomes the contract, and must govern until payment, or at least until demand and actual default, as the parties

must have so intended." In support of this proposition, see, also, *Paine* v. *Caswell*, 68 Me. 80 (28 Am. Rep. 21).

3.   With this discussion of the rules of law that obtain relating to the recovery of interest upon agreements for its payment, we are now prepared to consider the effect of the county treasurer's indorsement, "Not paid for want of funds," upon a county order or warrant under the law which requires payment of interest thereon after such indorsement at the legal rate. It is contended by counsel for the plaintiff, contrary to defendant's position, that the order or warrant is itself a contract; but with this we have little concern. It is sufficient if the obligation which the law imposes upon the county, where the parties have dealt with it upon the faith of such obligation, constitutes a contract for the payment of the legal rate of interest obtaining at the time of the indorsement. The order or warrant itself has at least the force of an audited demand against the county, and *prima facie* will support an action which may be instituted upon it to establish the same by judgment : *Goldsmith* v. *Baker City*, 31 Or. 249 (49 Pac. 973). People deal with the county upon the understanding that under the law their audited demands, evidenced by orders received from the clerk, will be paid on presentation to the treasurer, or, in case of lack of funds, indorsed so as to entitle them thenceforth to draw interest at the legal rate. They must also understand that the indorsed orders can only be redeemed by the county treasurer according to the priority of their presentment and indorsement. And thus it is that the time for payment is, from the nature of things, indefinite, depending entirely upon the state of the county treasury. This understanding the Supreme Court of Nebraska has characterized as an implied agreement on the part of the person dealing with the county that he shall wait until money is made

available by the ordinary mode of collecting revenues, and in the usual course of the county's business : *Brewer* v. *Otoe County*, 1 Neb. 373. This case is cited as authoritative in *Chapman* v. *Douglas County*, 107 U. S. 348 (2 Sup. Ct. 62). Now, if there is an implied agreement on the part of the holder of the warrant to abide the accumulation of funds in the ordinary course with which to meet the demand, the converse ought to be, and undoubtedly is, true, that there is an implied, if not an express, agreement, engendered by operation of law and the transaction of public business, which must be in conformity with its requirements, that the county will pay the legal rate of interest upon the indorsed county order. So that here is, in effect, an agreement or contract upon the part of the county to pay the legal rate of interest.

4. But it is argued, admitting a contract to exist to this extent, that the agreement is to pay only the legal rate as it may be established from time to time by the legislature, and that the contract was made with reference to the variable rate, and not solely with reference to that which prevailed at the date of the indorsement. In this we cannot concur, for, if we apply the general rule of law that where a person contracts for the payment of a definite rate of interest to a day certain, or contracts for the payment of interest without naming the rate, interest is recoverable in the one instance at the agreed rate after the day named, and in the other at the legal rate until judgment, we have a clear case of the right of the holder of the indorsed order or warrant to recover from the county interest at the rate prevailing at the date of the indorsement to the time of its payment by the treasurer ; and such we believe to be the law governing the transaction. It is well understood that the county cannot be coerced into making payment, and the warrant holder, although he may

sue upon his warrant, and obtain judgment against the county, which would entitle him to another order or warrant in lieu of the judgment, yet he must abide his time, and await the accumulation of funds whereby to discharge the obligation in accordance with his implied agreement. And it would be unjust and inequitable if the other party to the contract, being an agency of the state, could, through the legislature, abolish or reduce interest to a nominal rate, and thus leave the party remediless for the recovery of any compensation for loss sustained by reason of delayed payment of his demand.

5. The constitutional provision against the impairment of contracts is not limited in its scope and purpose to express contracts and specific agreements, but extends as well to "that much larger class," says Mr. Justice MILLER in *Fisk* v. *Jefferson Police Jury*, 116 U. S. 131 (6 Sup. Ct. 329), "in which one party having delivered property, paid money, rendered service, or suffered loss, at the request or for the use of another, the law completes the contract by implying an obligation on the part of the latter to make compensation. This obligation can no more be impaired by a law of the state than that arising on a promisory note." See, also, 2 Story, Const. § 1377.

6. Even in the absence of a constitutional inhibition to a retrospective operation of legislative enactments, it is a general rule that a statute was intended to operate prospectively only, unless a purpose to give it a retrospective force is declared by clear and positive command, or is to be inferred by necessary and unavoidable implication from the language of the act, taken in its appropriate signification, and construed in connection with the subject-matter and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention : Endlich, Interp. Stat.

§ 271; *Lesseps* v. *Wicks*, 12 La. Ann. 739; *People ex rel.* v. *Board of Supervisors*, 70 N. Y. 228; *Chew Heong* v. *United States*, 112 U. S. 536 (5 Sup. Ct. 255); *Bay* v. *Gage*, 36 Barb. 447; *Bauer Grocer Co.* v. *Zelle*, 172 Ill. 407 (50 N. E. 238).

7. Nor does the emergency clause inserted in the amendatory act indicate an intention upon the part of the legislature to extend its regulations to outstanding county orders or warrants, but, when considered in a prospective sense, under the rule which governs unless the intention otherwise clearly appears, the construction of the act in question is obvious, and its application clear. In *Koshkonong* v. *Burton*, 104 U. S. 668, the question was involved whether the holders of certain municipal bonds were entitled to interest upon coupons thereto attached, after their maturity, they not having been paid at the date stipulated therefor. It appears that the state courts of Wisconsin had construed the statute in force at the time of the issuance of such bonds as in harmony with the allowance of such interest. Thereafter the legislature, by direct enactment, attempted to place the opposite construction upon such statute, but it was held that the later enactment impaired the implied obligation of the municipality to pay interest upon interest as the law stood under the construction of the state courts, and that such interest was recoverable, notwithstanding the later act. *Union Sav. Bank* v. *Gelbach*, 8 Wash. 497 (24 L. R. A. 359, 36 Pac. 467), is parallel with the case at bar, and it was there held, but upon reasoning different from that which seems to us to be more in harmony with the legal conditions which prevail and surround the transaction, that a change in the legal rate of interest by legislative enactment did not affect the rate theretofore payable upon warrants issued prior to the date when the new enactment became operative. This case was followed in

*Williams* v. *Shoudy*, 12 Wash. 362 (41 Pac. 169), wherein it is said : "The right of a holder of a warrant legally issued to interest (after proper presentment and indorsement made) is as fixed and certain in law as the right to demand payment of the principal." See, also, *State ex rel.* v. *Bowen*, 11 Wash. 432 (39 Pac. 648); *City of Scranton* v. *Hyde Park Gas Co.*, 102 Pa. St. 382 ; *Missouri Pacific Ry. Co.* v. *Patton* (Tex. Civ. App.) 35 S. W. 477 ; *First Nat. Bank* v. *Arthur*, 10 Colo. App. 283 (50 Pac. 738); *Butler* v. *Rockwell*, 17 Colo. 290 (17 L. R. A. 611, 29 Pac. 458); *Murdock* v. *Franklin Ins. Co.*, 33 W. Va. 407 (10 S. E. 777, 7 L. R. A. 572); *Marks* v. *Trustees*, 37 Ind. 155.

Upon these principles and authorities we are constrained to affirm the judgment of the court below. We have reached the conclusion after much deliberation, and believe it to be in harmony with justice and fair dealing. The other view would lead, under the system adopted for the transaction of county business and the manner of payment of the orders or warrants of the county, to a practical repudiation of a material portion of the county's obligations. In the present case the county has become obligated by positive enactment to pay the legal rate. Parties have dealt with it upon that understanding, and when claims duly audited, which have accrued in course of business transactions with the county, are presented, and indorsed, "Not paid for want of funds," the law reads into the transaction a contract to pay interest thenceforth upon the warrant, and the measure of recovery for delay in payment is the then existing rate of interest until paid, and subsequent legislation cannot affect or impair the obligation.

AFFIRMED.