DOROTHY BRYANT *v.*
DEPARTMENT OF REVENUE

Ferris F. Boothe, Black, Kendall, Tremaine, Boothe & Higgins, Portland, represented plaintiff.

G. F. Bartz and James D. Manary, Assistant Attorneys General, Salem, represented defendant.

Decision for plaintiff rendered July 25, 1975.

CARLISLE B. ROBERTS, Judge.

Plaintiff, the widow of Oliver W. Bryant, an interested party within the purview of ORS 118.180, appealed from the defendant's Notice of Refund Denial involving the inheritance tax on the Estate of Oliver W. Bryant, deceased, Inheritance File No. 193836. Plaintiff's claim for refund is based upon her assertion that one-half of the personal property of the deceased husband, received by the plaintiff as a surviving joint owner, is excludable from the decedent's estate under the provisions of ORS 118.010(2) (a), the plaintiff having given "fair consideration in money or money's worth" for such share.[1]

The personal property of a decedent held in joint tenancy is taxable under the provisions of ORS 118.010 (2) (a), which reads in part:

"(2) (a) Whenever property, other than real property held by the entirety, is held in the joint names of two or more persons, or deposited in banks or other institutions or depositories in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons the right of the surviving joint tenant or tenants, person or persons to the immediate ownership or possession and enjoyment of such property shall be deemed a taxable transfer in

---

[1] Following the filing of this case, the 1975 Legislative Assembly enacted House Bill 2608 (Or Laws 1975, ch 685), creating a conclusive presumption that one-half of the property held jointly, with right of survivorship, was owned by the surviving spouse and is deductible from the taxable estate. The new act applies to tax determinations where death occurred on and after September 13, 1975 (the effective date of the law).

the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased joint tenant or depositor * * *."

The plaintiff asserts that one-half of such property in the present case is not taxable under the statutory exception provided by ORS 118.010(2) (a):

"* * * excepting therefrom such parts thereof as may be shown to have originally belonged to such surviving joint tenant or person, and never to have been acquired from the decedent for less than a fair consideration in money or money's worth, * * *."

It is plaintiff's contention that she provided consideration for at least half of the joint property, it being provable that, at a minimum, she performed half of the work, services and skills that resulted in the accumulation of the property found in the estate for which refund is claimed, such one-half of its value being excludable from tax as having been acquired for a "fair consideration in money or money's worth, * * *."

The testimony concerning plaintiff's contribution to the family enterprise of time, effort and skills was abundant. The facts to which she and her daughter, Mrs. Orem, testified, although self-serving, were not contested. Numerous other witnesses testified without contradiction as to the initiative, long hours and hard labor contributed by plaintiff and as to the authority exercised by her in the grocery store.

On May 12, 1923, the plaintiff, age 16, married Oliver W. Bryant, age 18. Four months after their marriage, the couple moved from Wichita, Kansas, to Portland, Oregon, where the husband's parents resided. Mr. Bryant's parents made a loan to the young couple which enabled them to purchase a small grocery store in Portland. They lived in the rear of the store and worked seven days a week from approxi-

mately 7 a.m. to 11 p.m. In this first venture, some personal services were rendered by the parents.

The original loan was repaid; the store was profitably sold in 1929. The couple made successive purchases of stores located at 6010 S.E. Foster Road, which was owned for approximately a year, and a store located at S.E. Clinton Street and S.E. 33d Avenue, which was owned for approximately six years until 1936. In each of the stores, the business was built up and operated through the joint efforts of the claimant and her husband and the title to each was held jointly. In addition, between 1936 and 1938, the couple purchased store inventories from several bankrupt grocery stores, which were resold at a profit. The goods had to be moved, cleaned up, and prepared for sale. In all these transactions, the testimony was that the couple again shared equally in the planning and in the physical labor required and, in addition, the plaintiff was responsible for most of the bookwork that was necessary for these transactions.

In 1938, the plaintiff and her husband purchased in their joint names a grocery store located at 800 N.E. Broadway, which was operated under the assumed name of Broadway Thrifty Market until 1959, when it was sold. The couple lived in a small house located at the rear of the store. The uncontradicted testimony of several witnesses was that, from 1938 until approximately 1948, the couple worked side-by-side in operating the store, which was open from 7 a.m. to 11 p.m., seven days a week. During the 1950s, the decedent's health began to deteriorate, severely restricting his activities in the operation of the grocery store. During this time, the plaintiff put in substantially more hours at the store than did the deceased, who was hampered by an allergy condition, an ulcer which required removal of 85 percent of his

stomach in 1954, a hernia, several eye operations, and the development of emphysema in 1957.

After the sale of the store in 1959 and until the death of Mr. Bryant on April 15, 1972, the plaintiff handled most of the couple's financial transactions, in addition to the bookkeeping, including writing all of the checks for their expenditures, as well as caring for the ailing Mr. Bryant. All assets that were acquired by the Bryants' joint efforts during this time as well as throughout their marriage were held in their joint names in conformity with their understanding of a de facto partnership.

The facts are such that there can be no question that the plaintiff contributed one-half or more of the mental and physical efforts which led to the accumulation of the jointly held personal property included in the decedent's estate which is the subject matter of this suit. All property that was referred to in the testimony consistently was held in joint tenancy and no testimony was provided that any of the assets acquired by the couple were attributable to any source other than their joint efforts, such as assets brought into the marriage, gifts, or inheritance, except for some Kansas realty inherited by decedent and his sister. The parties have stipulated that decedent's receipt of $10,000 in 1971, on sale of this property, is not a part of the joint assets of the estate here in dispute.

Other than the Kansas account, the defendant disputed the plaintiff's position on the ground that the plaintiff has not in fact established the presence of a partnership between herself and the deceased.

The defendant rests its assertion upon the following facts and the inferences derivable therefrom: (a) the absence of any demonstrable formalized agree-

ment between husband and wife; (b) the fact that no yearly division of the profits of the allegedly joint enterprise was reflected in the books (which were kept by the plaintiff); (c) the stores' successive municipal business licenses named the decedent as the sole proprietor; (d) the truck used in the business was licensed, and the casualty insurance thereon was issued, in the decedent's name only; (e) the joint federal and state income tax returns regularly filed by the decedent and plaintiff listed the plaintiff as "housewife"; (e) no partnership returns, federal or state, were ever filed by the decedent and plaintiff; and (f) social security self-employment tax was paid on the income tax returns on behalf of the husband but not for the wife.

In the absence of a partnership, it is the defendant's assertion that, even though the plaintiff provided half or more of the efforts that resulted in the couple's income, there can be no exclusion of this portion under the provisions of ORS 118.010(2) (a).

In the defendant's assertion as to the requirement of a formal partnership before assets can be exempted under ORS 118.010(2) (a), it relies substantially upon the decision in *Jennings v. Conn, as Administrator,* 194 Or 686, 243 P2d 1080 (1952). That case involved a suit by a widow to recover a one-half interest in the deceased husband's estate as opposed to the one-third of the estate that had been willed to her. The wife's claim was based upon her assertion that her husband's estate was created through their joint efforts and, therefore, one-half of the husband's estate was held in trust for her by her husband. The Supreme Court denied the plaintiff's assertion that any trust was created and went on to state, at 690, that

"[o]ne of the manifold duties imposed on a wife by the marital relationship is that she shall assist her husband, and that services rendered in such

assistance are presumed to be gratuitous. This doctrine emanates from the comman law and is a salutary rule. * * *"

The Supreme Court further stated, at 689, that

"* * * the law is well-settled that a wife may not recover, in the absence of an express contract or statutory provision, from her husband for her personal services rendered him, whether in the household or in his business. * * *"

Defendant contends that these conclusions require that this court declare the property in question fully taxable under ORS 118.010.

In reviewing defendant's position, it must be noted that in *Jennings, supra,* plaintiff was seeking to have a trust declared rather than attempting to determine the taxability of an estate under the inheritance laws. In that case, the actual ownership of the contested property was in the deceased's sole name rather than being held in any form of joint ownership, and, furthermore, the plaintiff-wife therein asserted, at 689:

"'* * * That the said C. W. E. Jennings believed in the husband controlling everything and plaintiff submitted to his demands.' * * *"

While this court has no power, as the plaintiff suggests, to overrule the general statements necessary to the decision made by the Supreme Court in that case, it also must interpret those statements within the confines of the facts presented in the case.

■ The ownership of the contested property in the *Jennings* case was held solely by the husband; there were no joint accounts. Evidence of the husband and wife as working in common ventures is lacking. The intent of the parties to engage in a joint venture cannot be found. The Supreme Court's reluctance to find a one-half trust ownership in the wife (which would, in effect, endorse a community-property-law position)

is understandable. Those principles, together with statements that a wife must have a contract to recover on her services even in her husband's business activities, are not necessarily applicable in determining the taxability of transfers under ORS 118.010 where joint property interests are present. Nor, for that matter, would they be applicable in any case where joint tenancy occurs, *as the tenancy itself is determinative of the mode of property transfer through the rights of survivorship.* Consequently, the court can find nothing in the *Jennings* case which is necessary to the determination of the taxability or exemption under ORS 118.010 of the property in question.

The exemption provisions of ORS 118.010(2) are similar to the provisions found in the Int Rev Code of 1954, § 2040, as enacted in the Revenue Act of 1924 and the Revenue Act of 1926. Section 2040, in pertinent part, provides for the inclusion in the gross estate of all property held in joint tenancy with the decedent "except such part thereof as may be shown to have originally belonged to such other person [joint tenant] and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: * * *."

In interpreting the exemption provision in the federal estate tax, several courts have talked in terms of the existence of a partnership, which in turn allows for the division of profits. The case of *United States v. Neel,* 235 F2d 395 (10th Cir 1956), 56-2 USTC ¶ 11,631, 49 AFTR 1735, is indicative of the nominal requirements which result in the finding of a partnership. The presence of a partnership entails the division of profits and therefore the partial exemption of jointly held property under the federal estate tax law provisions. The court, in *Neel,* stated that a finding

of the existence of a partnership may be based on either oral agreements *or* may be a result of the acts and conduct of the parties involved. This conforms to the Oregon Supreme Court's decision in *Hayes v. Killinger,* 235 Or 465, 385 P2d 747 (1963).

In *United States v. Neel, supra,* the court stated that a partnership would be assumed to have been created where there was a joining together of money, goods, labor or skill for the purpose of conducting a trade, business or profession where a community of interest in the profits and losses exists. The reasoning expressed in that case is supported by *Berkowitz v. Commissioner,* 108 F2d 319 (3d Cir 1939), 39-2 USTC ¶ 9785, 24 AFTR 11, in which the court held that no partnership agreement was necessary to find that a portion of the property belonged to the wife where its existence was the result of the joint efforts of the husband and wife which created the joint estate. This same opinion was also expressed in *Singer v. Shaughnessy,* 198 F2d 178, 181 (2d Cir 1952), 42 AFTR 336, 339.[2]

■■■ The exemption provisions on joint property ownership, as found in ORS 118.010(2) (a) and as similarly found in the federal estate tax law, do not on their face require the existence of any partnership agreement before the partial exemption shall be granted. Several cases involving the federal estate tax exemption have clearly ruled in conformity with this position. Those cases hold that the test for exemption is whether or not the surviving joint tenant con-

---

[2] The majority of the cases decided in the surviving joint tenant's favor have involved the finding of a "nominal partnership" which cannot be equated, either by the type of facts found or through its legal effect, with having established a partnership in the legal sense. The finding of this type of "tax partnership" has merely been used to dispose of the cases summarily.

tributed full and adequate consideration in money or money's worth in the acquisition of the claimed interest in the property. *Estate of Everett Otte,* 31 CCH Tax Ct Mem 301, 41 P-H Tax Ct Mem ¶ 72,076 (1972), held that where a wife's work is not that of an ordinary housewife but rather is more extensive and directly related to the production of the jointly held property, then her activity justifies a division of property under the Int Rev Code of 1954, § 2040, and that the only test that need be met is whether or not she contributed adequate and full consideration in money or money's worth for the acquisition of such property. This, in effect, must be held to be the true test for a qualification under the exemption statute, in that, once the joint ownership provisions have been met, the only additional test is whether or not the source of the surviving tenant's property rights is based upon fair consideration given by the surviving tenant as opposed to any gift, whether implied or actual, whose source can be traced to the deceased joint tenant.

The cases of *Richardson v. Helvering,* 80 F2d 548 (DC Cir 1935), 35-2 USTC ¶ 9644, 17 AFTR 76; *Estate of Charles A. Trafton,* 27 TC 610 (1956); *Estate of Lester L. Fletcher,* 44 BTA 429 (1941); and *Estate of Joseph G. Giuliani,* 11 CCH Tax Ct Mem 673 (1952), also are in harmony with the view that the only necessary qualification for granting the exemption of joint property is that the surviving joint tenant show that the joint interest was acquired for a fair consideration in money or money's worth, which is met by providing sufficient proof that the joint property was accumulated through the joint efforts.

In interpreting the exemption provisions of ORS 118.010(2) (a), the court concludes that the exemption provisions do, in fact, pertain to joint property for which the surviving joint tenant can prove fair consideration in money's worth, and the estab-

lishment of a legal partnership between the joint tenants upon the facts presented is unnecessary. It must be noted, however, that the consideration in "money's worth" must have resulted in the acquisition of the jointly held property, either directly or indirectly, in that the activities of the parties must have directly resulted in the accumulation of the asset.

The court's decision takes into account the holding in *Estate of Joseph A. Brudermann,* 10 TC 560 (1948), which denied any exemption of jointly held property which arose from the decedent's sole efforts, even though the husband and wife had an oral agreement to share all assets acquired in their marriage. *See also Estate of Fletcher E. Awrey,* 5 TC 222 (1945). These cases are clearly distinguishable factually from the subject case.

The court's holding must also be distinguished from results which might occur in a community property state, where different rights attach to income which is the sole result of the spouse's labors (as was held in *Sullivan's Estate v. Commissioner,* 175 F2d 657 (9th Cir 1949), 49-2 USTC ¶ 10,727, 38 AFTR 657).

The spouse's claim for exemption in Oregon must be based upon either her efforts or other monetary type contributions which *directly* result in the acquisition of the joint personal property. This interpretation is in conformity with the Oregon Supreme Court's decision in *Holman v. Mays,* 154 Or 241, 59 P2d 392 (1936), in which the court, citing numerous cases, continued to hold that estates by the entirety cannot be created in personal property and, as a result, a joint bank account is subject to inheritance tax on the death of one of the joint tenants, except to the extent of the excess of the surviving tenant's deposits over his or her withdrawals therefrom, or,

in other words, the amount of money contributed by the surviving joint tenant.

■ While the defendant has cited a number of cases on partnerships and the necessary requirements that must be met in the formation of such partnerships, the federal and Wisconsin③ cases supportive of its position involve a division of personal income for tax purposes and are found to deal with attempts at proving the existence of a legal partnership as a tax-saving device. The establishment of a legal partnership in order to prove consideration is not required for inheritance tax purposes under the exemption provision of ORS 118.010(2) (a).④

It is also true that in many cases interpreting the facts necessary to prove a contribution under a similar exemption provision of Int Rev Code of 1954, § 2040, where the courts have found facts which establish a "nominal partnership," which summarily decides the case, the courts have not consistently demanded the presence of the elements necessary to form a legal

---

③ *Wagner et al. v. Department of Revenue,* 66 Wis2d 781, 224 NW2d 216 (1974), CCH STC Rep ¶ 250-293 (1974); *Stern v. Department of Revenue,* 63 Wis2d 506, 217 NW2d 326 (1974); *Skaar v. Department of Revenue,* 61 Wis2d 93, 211 NW2d 642 (1973). These cases were brought as a consequence of Wisconsin's personal income tax act which, unlike the federal and Oregon income tax laws, prohibits income splitting on joint income tax returns.

④ In fact, in certain cases, the level of proof necessary to find a partnership, even for income tax purposes, has been held not to equal the level which would be required to create a legal partnership. In *Weizer v. Commissioner,* 165 F2d 772 (6th Cir 1948), 36 AFTR 706, which involved a question as to the existence of a partnership for income tax purposes, it is stated, at 776, that the facts as presented, while not necessarily creating a partnership, "qualifies a family partnership to operate under income tax rulings applicable to partnerships generally. * * *"

partnership.[6] In addition, some cases, as previously stated, do not demand the presence of even the nominal type of partnership, but rather turn upon the parties' treatment of their contributions and the presence of contributions which can objectively be found to have resulted in the direct acquisition by the surviving tenant of the claimed portion of the acquired joint property.

The record in this case shows that Mrs. Bryant kept the books of the husband and wife. She was familiar with income tax reporting and met the requirements for filing joint returns, federal self-employment tax for her husband, social security and withholding requirements for employees, but she never filed federal or state partnership returns.

The record also shows that plaintiff and her husband had a very close relationship and this was manifested in several ways, not the least of which was the business relationship. This stemmed from their marriage and was chiefly evidenced by their joint work contributions, capital contributions from joint earnings and their holding all property jointly.

As the plaintiff testified: "* * * We paid no wages [to ourselves]. * * * We took no salary. What was left was—we knew was ours."

---

[6] The Uniform Partnership Act, a part of Oregon's law (ORS chapter 68) requires the following four elements in a partnership: (1) The contracting parties must intend to form a bona fide partnership and to accept the legal requirements and duties emanating therefrom. (2) There must exist a community of interest in the capital employed. (3) There must be an equal voice in the management of the partnership. (4) Finally, there must be a sharing and distribution of profits and losses.

The Bryants may well have had a partnership but, because of their failure to file partnership income tax reports and the use of the husband's name alone as proprietor, truck owner, and the like, the court prefers to base its decision on the joint tenancy and the clear proof of consideration.

The fact that plaintiff received no salary for her substantial contributions (and consequently, as bookkeeper, she withheld no taxes on wages or for social security) is consistent with her position as a joint owner. The business accounts and the couple's personal accounts were merged in the bookkeeping records. All deposits were made jointly. In the case of a claim against the husband, on account of the business, the wife's interest in the joint deposit was equally vulnerable, even if they were not formal partners. *C. A. Babcock Co. v. Katz et al.,* 121 Or 64, 75, 253 P 373 (1927).

The court finds, from the uncontradicted evidence, that Mrs. Bryant contributed an equal or greater share of each and every activity which culminated in the acquisition of the joint property in question. The plaintiff has proved that she has a one-half interest in such property which was acquired for a "fair consideration in money or money's worth" and, as such, is exempt from inheritance tax under ORS 118.010 by the provisions of ORS 118.010(2) (a).

As to the plaintiff's contention that the provisions of ORS 118.010(2) (a) are unconstitutional as sexually discriminatory, the court finds that the statute does not violate the Equal Protection Clause of the Fourteenth Amendment or other constitutional provision. The statute as written and as applied provided for equal treatment as to both husband and wife in their proof of contribution. Any difference of proof necessitated by the statute results from the parties' own treatment of their ownership rights, which may result in a greater burden of proof. No classifications are set up by the statute itself and there is no preference in its application by any classification (unlike the preference for males which was found in the Idaho probate code provision struck down in *Reed v. Reed,*

404 US 71, 92 S Ct 251, 30 L Ed2d 225 (1971)). The treatment of any survivor, whether male or female, is the same under the statute and the necessity of finding actual contribution by the surviving tenant, the source of which is not a gift from the deceased, is not an arbitrary requirement but rather a necessary one, if the state is to tax transfers uniformly under the provisions of ORS 118.010. No evidence was submitted that the statute as applied results in invidious discrimination as is required under the Equal Protection Clause before a violation of the plaintiff's rights can be found. *See Morey v. Doud,* 354 US 457, 463, 77 S Ct 1344, 1 L Ed2d 1485, 1490 (1957).

A second issue in this suit is raised by plaintiff's claim for eight percent interest, to be paid by the state on any inheritance tax refund which may be due her.

There is a decided split of authority as to whether, in the absence of specific statutory provisions therefor, a taxpayer is entitled to interest on taxes improperly assessed or charged. 72 Am Jur2d *State and Local Taxation* § 1068 (1974). *See also Case v. Chambers et al,* 210 Or 680, 712, 314 P2d 256 (1957):

> "* * * Many cases are collected in annotations in 57 ALR 357, 76 ALR 1012, and 112 ALR 1183. The editors of those annotations state that the weight of authority favors the allowance of interest, although the contrary view has been asserted somewhat more frequently in recent cases."

In Oregon, an early case, *Seton v. Hoyt,* 34 Or 266, 272, 55 P 967 (1899), stated that: "* * * the sovereign is not required to pay interest, except when self-imposed; * * *."

The *Seton* case was considered in *Case v. Chambers et al, supra,* in connection with a plea for interest pay-

ments on property tax refunds, where no specific provision related to the payment of interest. The court, in granting the requested refund, relied upon a statute, ORS 306.260, which authorized the State Tax Commission, upon "the audit of the returns required by any revenue measure" to allow interest on refunds at the rate of six percent per year.[6]

■ Following the decision in *Case v. Chambers et al, supra,* decided July 3, 1957, the question was considered by the Legislative Assembly at its next legislative session and a specific provision for the payment of refunds in specific property tax situations was enacted in ORS 311.812 (which is given further mention below). In the present state of the law, it appears to the court that the rule of *Seton v. Hoyt, supra,* is once again our only guide and that the general statute providing for interest cited by plaintiff (ORS 82.010) does not apply to the state or a county in the absence of express mention.

An examination of the present status of the revenue-raising measures under the direction or supervision of the Department of Revenue shows sufficient variety in the rules to cause a judge to hesitate to conclude that the present law "expresses the public policy of the state that interest is allowable on tax

[6] It is the understanding of the court that research would reveal that this particular statute was enacted by Or Laws 1931, ch 229, in order to give authority to the State Tax Commission to make refunds of cigarette taxes which had been paid to the state prior to the elimination of a cigarette tax by referendum in 1926. See Note, Gen Laws of Or 1927, at 14. Interest on refunds was specifically provided. The provision related only to taxes for which returns were filed with the commission. In 1953, the measure was codified as ORS 306.260, and it was subsequently renumbered by the codifiers as ORS 305.755. It was repealed in 1969, both in Or Laws 1969, ch 166, § 8 (a measure relating to income taxes) and in ch 520, § 49 (a statute which established the Department of Revenue).

refunds generally * * *," as stated in *Case v. Chambers,* at 713. Consider the following:

ORS chapter 311, relating to the collection of property taxes, contains ORS 311.806, the specific provision for the refund of taxes on real and personal property which grew out of the decision in *Case v. Chambers et al, supra,* and ORS 311.812 relating to interest, which provides:

"(1) Except as provided in subsection (2) of this section, no interest shall be paid upon any tax refunds made under ORS 311.806."

Subsection (2) then provides for interest payments on refunds in four particularly described circumstances and subsection (3) provides that such interest shall be paid at the rate of two-thirds of one percent per month or major fraction of a month. ORS 306.260, on which *Case v. Chambers* relied, has been repealed.

ORS chapter 118, providing for inheritance taxes, provides in ORS 118.260(2) that interest will be charged on inheritance taxes nine months after decedent's death at the rate of two-thirds of one percent per month (with a proviso that a deposit may be paid to avoid interest). Although ORS 118.360 provides for refunds, there is no reference therein to the payment of interest to a taxpayer.

ORS chapter 119, pertaining to gift taxes, contains a number of sections relating to the payment of interest at the rate of two-thirds of one percent or at the rate of one percent per month if time for payment is extended, if extension of time is granted and no payment is made, etc. (ORS 119.130, 119.140, 119.300, 119.320 and 119.330.) Refund of overpaid tax is provided in ORS 119.150 without provision for interest.

In contrast, ORS chapters 316, 317 and 318 relating to the various income taxes imposed upon indi-

viduals, trusts, and corporations, uniformly provide for interest at the rate of two-thirds of one percent per month on unpaid taxes (ORS 314.400(2)) and for similar interest on the payment of refunds (ORS 314.415(1) (a)), but specify that no interest shall be paid on withholding taxes prior to the filing by the taxpayer of a return, or during a period of four months after the employee's return is filed or due, whichever is later (ORS 314.415(1) (c)).

ORS chapter 320, the amusement device tax, makes provision for the imposition of penalties but does not refer to interest, either with regard to tax deficiencies or to tax refunds (and, in fact, no provision is made for a tax refund).

ORS chapter 323, the cigarette tax, provides in ORS 323.195 and 323.315 for the imposition of interest on late payments for tax stamps at the rate of one-half of one percent per month. ORS 323.330 provides that interest may be paid on refunds of overpayments on stamp purchases, at the rate of one-half of one percent per month, but contains a specific restriction that "no refund or credit shall be made of any interest imposed upon the claimant with respect to the amount being refunded or credited."

In consideration of this assortment of rules,[7]

---

[7] The 1975 Legislative Assembly, in SB 677 (Or Laws 1975, ch 593) established greater uniformity in the application of interest and penalties on deficiencies, increasing the amounts in both categories, affecting the inheritance, gift, and income taxes, after September 13, 1975, but made no provision for interest to be paid to the taxpayer on sums refunded from inheritance and gift tax payments.

The court has not overlooked the decision relating to interest payments by the state in *State Hwy. Comm. v. Carmel Estates*, 18 Or App 235 (1974). However, in view of the specificity of the tax statutes relating to taxes, refunds and interest, there appears no justification for judicial construction in this area.

the court is forced to conclude that when some statutes expressly provide for interest on refunds of certain taxes, the absence of such a provision in other tax statutes shows the legislature intended to deny interest in those cases. Any other conclusion would simply constitute judge-made law.

However, the plaintiff is entitled to a refund in this case and, since the statute does not include the peculiar restriction quoted above from ORS 323.330, the court concludes that the plaintiff is also entitled to a refund of the amount of interest which she paid to the defendant on account of the late payment of inheritance taxes (which taxes should not have been imposed, under the court's determination, and which are to be refunded by reason of this decision).

Defendant's denial of refund, received by plaintiff on or about February 18, 1974, is held to be void. Defendant shall refund to plaintiff the sum of $3,151.54, without interest, but interest on account of late payment, paid by plaintiff to defendant and allocable to the principal sum of $3,151.54, shall be refunded to plaintiff. Plaintiff is entitled to her lawful costs and to reasonable attorney fees in the sum of $2,000.